UNITED STATES of America,
Appellee,

v.

Curley KING, Appellant.

No. 21553–A.

United States Court of Appeals
Ninth Circuit.

Oct. 25, 1968.

Carlos C. LaRoche, Robert Michael Zweig (argued), San Francisco, Cal., for appellant Culey King.

William M. Byrne, Jr., U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Anthony M. Glassman, Asst. U. S. Atty.,

Los Angeles, Cal., (argued), for appellee United States.

Before HAMLEY and MERRILL, Circuit Judges, and KILKENNY, District Judge.[*]

HAMLEY, Circuit Judge:

Curley King was convicted and sentenced, after a non-jury trial, for knowingly and wilfully concealing information concerning the robbery of a national bank, in violation of 18 U.S.C. § 4 (1964). He appeals, arguing that the evidence is insufficient to sustain the conviction and that 18 U.S.C. § 4 is unconstitutional as applied in this case.[1]

Insofar as relevant for the purposes of this appeal, the indictment charges, in effect, that on April 29, 1966, in Los Angeles County, California, defendant, having knowledge of the commission of a robbery of the Vermont and Thirtieth Street Branch of the Bank of America, by Sharon Elizabeth Weston, Burley James King and Jackie Jean Dixon, wilfully concealed information concerning the participants therein, and did not, as soon as possible, make known that information to a judge or other person in civil authority under the United States.

▊ In order to obtain a conviction on this charge, it was necessary for the Government to prove beyond a reasonable doubt that: (1) one or more of the principals had committed and completed the described robbery on or prior to April 29, 1966, (2) defendant had full knowledge of that fact, (3) defendant failed to notify the authorities, and (4) defendant took an affirmative step to conceal the crime.[2]

With regard to the first two of these elements, the trial court was entitled to find as follows: On the afternoon of April 28, 1966, defendant was present in an apartment in Los Angeles when his brother, Burley King, together with Jackie Dixon and Sharon Elizabeth Weston, commenced a conversation about robbing a bank. Defendant left before the conversation was completed. On the afternoon of April 29, 1966, Sharon Weston robbed the branch bank referred to above, taking $783. After the robbery, she entered a car containing Burley King and Jackie Dixon and made her getaway.

Later that day this trio arrived at the same apartment where the conversation of the previous day had taken place. Defendant was present when the other three arrived. The radio was on at the time and defendant heard a broadcast to the effect that the Vermont-Thirtieth Street branch bank had been robbed. In defendant's presence, Sharon Weston started laughing and said, "I did it." Jackie Jean Dixon added, "It's true, she robbed the bank." Defendant said nothing other than to initially express disbelief that Sharon Weston had committed the robbery. Burley King then gave his brother, the defendant, "some" of the money obtained in the robbery.

The evidence reviewed above is sufficient to warrant a trial court finding that Sharon Weston had committed the robbery on April 29, 1966, and that later during that day defendant had full knowledge of that fact. As before indicated, these are two of the four essential elements of the crime charged.

We find nothing in the record bearing upon the third essential element, namely, that defendant failed to notify the authorities. However, defendant makes no

---

[*] The Honorable John F. Kilkenny, United States District Judge for the District of Oregon, sitting by designation.

1. Title 18, § 4, defining the crime of misprision of felony, reads:

"Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined not more than $500 or imprisoned not more than three years, or both."

2. See Neal v. United States, 8 Cir., 102 F.2d 643, 646. The statement of the elements of the crime, as set forth in Neal, has been accepted by this court. See Lancey v. United States, 9 Cir., 356 F.2d 407, 409, 410.

point of this and apparently concedes that the Government proved the first three elements of the crime.

Defendant argues, however, that the evidence is insufficient to warrant a finding that the Government established the fourth essential element—that defendant took an affirmative step to conceal the crime of the principals.

The trial court found that the defendant took two such affirmative steps. According to the court one of these was that, after defendant heard about the crime over the radio, he drove the two girls over to the apartment of one Patricia Hood so that the girls could drive to San Francisco with a friend of Miss Hood's until things "cooled off."

The only evidence in the record bearing upon this finding was the testimony of Thomas W. Lenehan, a special agent of the Federal Bureau of Investigation. On direct examination, he testified that defendant told him, during an interview at the jail, that on the night of the robbery, defendant drove Sharon Weston and Jackie Jean Dixon to the Hood home, so that the girls could go to San Francisco. On cross examination, however, he testified that this statement as to who had driven the car was only his "impression" of what defendant had told him, and that "it could be correct or it could be incorrect. I don't know." The agent's notes taken at the time of his interview with defendant made no mention of who drove.

■ This evidence is insufficient to support a finding, beyond a reasonable doubt, that defendant drove the car that evening. If he was only a passenger in the car, his status as such would not be an affirmative step to conceal information about the crime.

The court also found that defendant's act in accepting some of the money which he knew to have been the fruit of the robbery, was an affirmative step to conceal information about the crime.

The record does not indicate how much money defendant received from his brother or why it was given to him. There is no testimony indicating that a purpose of defendant in receiving the money was to hide it for the principals, or to otherwise conceal information about the crime, or to in any other way assist the principals in making their escape or avoiding detection. For all this record discloses, defendant may have received only ten dollars out of the robbery proceeds, in repayment of a prior loan to his brother.[3]

Possibly it could be argued, although the Government has not done so, that the jury could infer that defendant's brother gave defendant some of the money in order to keep defendant quiet about the crime, and that defendant had this purpose in mind in receiving the money. If this were a purpose in giving and receiving the money, the receipt of the money by defendant would be an affirmative act fulfilling the fourth essential element of the crime. But Sharon Weston, who witnessed the transaction, gave no testimony supporting such a theory. On the contrary, she said defendant said nothing at the meeting other than to express initial disbelief. Having in mind that defendant was on such close relations with the principals that he was permitted to be present when they talked about the bank robberies and told of having committed this robbery, we think it would be stretching inferences far beyond what is permissible under the "beyond reasonable doubt" criteria for the judge to here find that defendant's brother felt it necessary to give defendant some money to buy the latter's silence.

3. With respect to the April 29, 1966 bank robbery, defendant was not charged under 18 U.S.C. § 2 (1964) with aiding and abetting the principals in the commission of the robbery or, under 18 U.S.C. § 3 (1964) with being an accessory after the fact or, under 18 U.S.C. § 2113 (1964) with receiving, possessing, concealing, storing or disposing of money knowing the same to have been taken from a bank in violation of 18 U.S.C. § 2113(b) (1964), relating to bank robbery.

■ We therefore conclude that on this meager evidence it was not established, beyond a reasonable doubt, that defendant's act and purpose in receiving "some" money from the robbery was an affirmative step designed to conceal the crime, or that it had that effect.

However, if it be assumed that defendant's activities constituted such an affirmative step, so that all four essential elements of the crime of misprision of felony were proved, a constitutional question is then presented concerning defendant's privilege against self-incrimination, guaranteed by the Fifth Amendment.

The record shows that defendant did not learn of the robbery, and of the principals' participation therein, until he was present with the principals in an apartment on the afternoon of the robbery. Had defendant, as soon as he learned these facts, and before receiving the money, left the apartment and notified the authorities, he would necessarily have attracted police attention to his own association with the principals at that meeting and at the meeting of the previous day when defendant heard the matter of a possible bank robbery being discussed. He would thus have risked being charged as an aider and abettor, or as an accessory after the fact.

The Government argues, in effect, that under the facts defendant could not have been convicted of one of those crimes. Therefore, the Government asserts, he would not have incriminated himself if he had reported his information to the authorities before he received some of the money from Burley King.

■ The privilege guaranteed by the Fifth Amendment not only extends to statements that would in themselves support a conviction but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the individual for a crime, provided such individual has reasonable cause to fear he might thereby be convicted of that crime. See Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed.

1118. See also, United States v. Trigilio, 2 Cir., 255 F.2d 385.

■ In our opinion, defendant had reasonable cause to believe that, if he had reported to the authorities the information concerning the robbery which had come into his possession, he would be prosecuted as an aider and abettor, or as an accessory after the fact. The disclosure of his presence at the two meetings would have been a most important link in the chain of Government evidence in any such prosecution. He had no way of knowing, at the time he made the decision not to report information concerning the crime, that his brother and the two girls would not give statements or testimony implicating him and, indeed, if he had informed on the others he could hardly count on their cooperation.

In our opinion, 18 U.S.C. § 4 would be unconstitutional under the Fifth Amendment if, and to the extent, applied to require one in defendant's circumstances, after learning of the bank robbery, to report that information to the authorities.

We therefore hold that the conviction is not supported by the evidence and that, in any event, under the facts of this case, the Fifth Amendment privilege against self-incrimination stands in the way of convicting defendant for a violation of 18 U.S.C. § 4.

Reversed.

KILKENNY, District Judge (dissenting):

The totality of evidence supports the lower Court's finding that defendant took an affirmative step to conceal the crime. Beyond question, he had knowledge of the commission of the crime. That he knew the money was stolen and received some of it is crystal clear. A principal witness testified defendant received "half" of the stolen money. Later, the same witness said defendant received "some" of the money. In my view, it is of little importance whether he received "half" or "some" of the money. In either case, he took an af-

firmative step to conceal the crime. The suggestion that he might have received the money in payment of a debt is pure speculation. Even if true, he knew the money was stolen and, consequently, knew its acceptance by him helped conceal the crime.

I fail to see the constitutional problems envisioned by the majority. Defendant, knowing the money was stolen, could have refused acceptance and reported the crime to the authorities or, in the alternative, he could have accepted the money and immediately delivered the evidence to the Government. If the logic of the majority is followed to its natural conclusion, one knowingly receiving and keeping any type of stolen property could employ the suggested constitutional shield and thus prevent prosecution under 18 U.S.C. § 4 (1964).

Defendant was in no way implicated in the bank robbery until he knowingly received the stolen money. Consequently, the rule stated in Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951), and United States v. Trigilio, 255 F.2d 385 (2d Cir. 1958), is not applicable.

I would affirm.