**UNITED STATES of America, Plaintiff-Appellant,**

v.

**James KUH and Howard Rea, Defendants-Appellees.**

No. 76–1234.

United States Court of Appeals, Seventh Circuit.

Argued June 18, 1976.

Decided Sept. 17, 1976.

Samuel K. Skinner, U. S. Atty., Vincent J. Connelly, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellant.

Donald N. Novelle, Chicago, Ill., for defendants-appellee.

Before CUMMINGS, PELL and TONE, Circuit Judges.

PELL, Circuit Judge.

This is an appeal by the Government under 18 U.S.C. § 3731 from an order dismissing Count Two of an indictment against defendants James Kuh and Howard Rea on the ground that the misprision of felony statute, 18 U.S.C. § 4, was unconstitutional as applied to the defendants.

## I. Background Facts

On July 11, 1975, the sum of $150,000 was taken from a Purolator Security, Inc. armored truck while it was en route to the South Suburban Federal Savings and Loan Association of Harvey, Illinois. Subsequently, FBI agents arrested Irwin Berndt and Edward Howard and charged them with the actual taking of the money. On July 28, 1975, James Kuh and Howard Rea were arrested and charged with a violation of 18 U.S.C. § 2113(c).

The formal complaint of FBI Special Agent Ramon W. Stratton stated that the defendants had received approximately $70,100 in money which they knew had been unlawfully taken and carried away from the custody and possession of Purolator, and which money belonged to and was in the care, control and management of South Suburban. The defendants had informed Stratton that the above mentioned money had been buried in the ground near Monee,

Illinois. On July 24, 1975, Stratton, the defendants, and Irwin Berndt had gone to the location, where Kuh and Rea pointed out the location of the buried money. Stratton and the defendants then dug up the money, which was counted at $70,100. The complaint alleged that the defendants had unlawfully and knowingly received, possessed, and concealed the money, knowing it to have been taken from a bank, in violation of 18 U.S.C. § 2113(c).

On September 10, 1975 a hearing on the complaint was conducted before Magistrate James T. Balog. At the hearing the Assistant United States Attorney presented evidence in support of the allegations of the complaint through the testimony of FBI Special Agent Ronald Travis. Magistrate Balog made a finding of probable cause on the charge specified in the complaint and forwarded the matter to the Grand Jury for consideration. On October 28, 1975, the October 1975 Grand Jury returned a two count indictment charging four defendants with violations of the Criminal Code. Count One of the indictment charged that Berndt and Howard had violated 18 U.S.C. § 2113(b). Count Two charged defendants Kuh and Rea with a violation of the misprision of felony statute, 18 U.S.C. § 4,[1] in that, after learning of the felony, they possessed and concealed a portion of the stolen money.

On December 12, 1975, the defendants Kuh and Rea filed a motion to dismiss the misprision count of the indictment in which alone they were charged. On February 4, 1976, the district court inquired of the Assistant United States Attorneys as to what the evidence in relation to that count would be. In a lengthy colloquy with the court, one of the prosecutors expressed the view that it was necessary for them to prove the concealment of the stolen money, i. e., the burying of the money and also the concealment in, apparently, one of the defendant's

homes. The Government attorney admitted that the indictment made no reference to the burying of the money and that, to the extent he had added the fact as to the burial of the money in the ground, he had provided a bill of particulars. The district court accepted the representations of the Assistant United States Attorneys in open court as being just as binding as a response to a bill of particulars or an opening statement to the jury. The district court therefore dismissed Count Two not because of any particular defect on the face of the indictment or any defect in the statute, but because of what the Government stated the count meant and what it was going to prove under the count. The court accepted the defendants' contention that their Fifth Amendment privilege relieved them of any obligation to give information that might tend to show their commission of a crime.

## II. Likelihood of Incrimination

■ It is well settled that the Fifth Amendment privilege against self-incrimination "must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer." *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). The Government contends that the district court's conclusion that Kuh and Rea could not be prosecuted for exercising the right to retain incriminating knowledge to themselves misapplied the *Hoffman* principle. The Government insists that 18 U.S.C. §§ 2 (aiders and abettors), 3 (accessories after the fact), and 2113(c) are not applicable to this case. Thus, it finds it "difficult to comprehend how the district court found that their report of the principal crime and receipt of its proceeds would have violated their privilege against self-incrimination."

We need not decide whether §§ 2 and 3 are applicable to this case, because we are

---

1. 18 U.S.C. § 4 reads as follows:
 Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined not more than $500 or imprisoned not more than three years, or both.

of the opinion that the defendants could reasonably apprehend that they had violated § 2113(c).[2] Under the facts alleged by the Government's indictment, particularly as supplemented by the Government's claimed intention of proving the burial near Monee, Illinois, the Government's assertion that a prosecution under § 2113(c) was a remote and naked possibility, outside of the ordinary course of law, is not persuasive.

The basic ground of the Government's argument is its contention that § 2113(c) requires both (1) knowledge of the robbery and (2) the intent specified under § 2113(b).[3] It contends that, under the facts alleged by the Government's indictment, the defendants Kuh and Rea could not be viewed as participants in the crime liable for bank robbery under § 2113(c). The claimed reason for non-liability is that subsection (c) incorporates the requirements of subsection (b) in defining the prohibited possession and concealment. Thus, the Government contends that, since it neither alleged nor offered to prove that Kuh and Rea had any intent to steal or purloin the money taken from the Purolator truck, it "*could not* and did not charge them with a violation of . . . § 2113(c)." (Emphasis supplied.)

. The Government supports its view of the necessary elements of a subsection (c) prosecution by citing *United States v. Harris,* 346 F.2d 182, 184 (4th Cir. 1965). In that case, where the accused was charged and convicted both of stealing the money and knowingly possessing it, in clear violation of *Milanovich v. United States,* 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961), and *Heflin v. United States,* 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959), the Fourth Circuit

found the possession count fatally defective. It stated, *id.* at 184, that

> only possession and concealment of money taken with that intent [*i. e.,* with intent to steal or purloin] is criminal. As the count does not contain this allegation, it is faulty.

But *Harris* does not say, as the Government suggests it does, that the money must be *concealed* with intent to steal or purloin.

We agree with the appellees that it was not the intention of the Fourth Circuit to establish as an essential element of § 2113(c) that a defendant must possess and conceal the money with the intent to steal or purloin. Rather, as we read *Harris,* the court was holding that the indictment under § 2113(c) must allege that a defendant has possessed and concealed money taken originally by someone who intended to steal or purloin. Whatever doubts this court might entertain as to *Harris,* however, have been effectively dispelled by *United States v. Gaddis,* 424 U.S. 544, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976). In that decision, the Supreme Court undertook to resolve the discordant views in the Circuits which had arisen regarding the proper application of the *Heflin* and *Milanovich* decisions. *Gaddis* clearly establishes that receipt or possession of the proceeds of a bank robbery in violation of § 2113(c) is simply not a lesser included offense within the total framework of the bank robbery provisions of § 2113 but one which "reaches a different 'group of wrongdoers,' *i. e.,* 'those who receive the loot from the robber.'" *Id.* at 548, 96 S.Ct. at 1026.

In the present case, the misprision count alleges that Kuh and Rea possessed and

**2.** 18 U.S.C. § 2113(c) reads as follows:

Whoever receives, possesses, conceals, stores, barters, sells, or disposes of, any property or money or other thing of value knowing the same to have been taken from a bank, credit union, or a savings and loan association, in violation of subsection (b) of this section shall be subject to the punishment provided in said subsection (b) for the taker.

**3.** 18 U.S.C. § 2113(b), in pertinent part, reads as follows:

Whoever takes and carries away, with *intent to steal or purloin,* any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both. . . . [Emphasis supplied.]

concealed money belonging to and in the care, custody, and management of South Suburban knowing that Berndt and Howard had taken and carried away that money with an intent to steal and purloin it. Although the defendants were not charged with violating § 2113(c), the Grand Jury could have formulated such a count without impropriety.[4] The Supreme Court has now authoritatively ruled that its *Heflin* decision did not purport to, and did not, add to or alter the statutory elements of the offense under § 2113(c). 424 U.S. at 550 n. 15, 96 S.Ct. 1023. Under *Gaddis*, whenever an indictment or information charges only a violation of § 2113(c), it is incumbent upon the prosecution at trial to prove beyond a reasonable doubt only the elements of that offense. *Id.* at 550 n. 15, 96 S.Ct. 1023. The language of the statute itself makes clear that a person, not himself a bank robber, who knowingly receives money taken from a bank in violation of § 2113(b) will be subjected to the same punishment as the taker. See note 2 *supra.*

In sum, the language of § 2113(c), as it plainly states, whether read in isolation or in the light of the controlling decisions, prohibits any person from knowingly receiving, possessing, or concealing money which has been taken from a bank in violation of § 2113(b).

### III. The Testimonial Privilege

 The privilege guaranteed by the Fifth Amendment not only extends to statements that would in themselves support a conviction but likewise embraces those which would furnish a "link in the chain of evidence" that could lead to prosecution, provided that the individual has reasonable cause to fear he might thereby be convicted of the crime. *See Hoffman, supra.* An effort to use the misprision statute

against persons who have knowingly possessed, received, and concealed the proceeds of a bank robbery clearly raises a serious Fifth Amendment question.

The Government insists that *United States v. Daddano,* 432 F.2d 1119, 1125 (7th Cir. 1970), *cert. denied,* 402 U.S. 905, 91 S.Ct. 1366, 28 L.Ed.2d 645 (1971), precludes the defendants' argument that the misprision statute is unconstitutional as applied to them. We do not agree and decline to give such a broad reading to that decision.

The defendants in *Daddano* relied upon a legal theory akin to that advanced by Kuh and Rea. This court rejected the argument and the holding of *United States v. King,* 402 F.2d 694 (9th Cir. 1968), observing that the offense of misprision as defined in 18 U.S.C. § 4 consists of an act of concealment in addition to failure to disclose, so that the statute did not purport to punish one solely for failure to report facts which he has reasonable fear might lead to his conviction of crime. *Id.* at 1125.

The *Daddano* ruling, however, must be read within the context of the facts of that case. Indeed, the opinion noted at the outset that the evidence presented an unusual story. *Id.* at 1121. The defendants charged in the misprision count had caused lie detector tests to be administered in order to determine whether certain persons were furnishing information concerning the bank robbery and the perpetrators thereof to governmental authorities investigating the same. It appeared from the evidence that whichever bank robber failed the test would be silenced, *viz.,* the others could shoot him if they wished. The arrangement whereby a member of the Special Investigations Unit of Cook County administered the polygraph tests presented a situation wherein an entirely separate offense from that involved in the original bank

---

4. The following language in *Gaddis, supra* at 550, 96 S.Ct. at 1027, is illuminating:

Situations will no doubt often exist where there is evidence before a grand jury or prosecutor that a certain person participated in a bank robbery and also evidence that that person, though not himself the robber, at least know-

ingly received the proceeds of the robbery. In such a case there can be no impropriety for a grand jury to return an indictment or for a prosecutor to file an information containing counts charging violations of 18 U.S.C. § 2113(a), (b), or (d), as well as of 18 U.S.C. § 2113(c). [Footnotes omitted.]

robbery was the means employed to mislead the federal authorities. In *Daddano* the polygraph procedures engaged in by the defendants constituted a distinct and separate concealment of the commission of a felony. This as the court observed in *Daddano* is the "act of concealment in addition to failure to disclose." *Id.* at 1125. The concealment in the present case, while it might incidentally have served to cloak the felony commission, was directly the concealment of the stolen money, a clear violation of 18 U.S.C. § 2113(c).

Moreover, although the *Daddano* court recognized that defendant Montagna had knowingly received part of the stolen money and, as a professional bondsman, had arranged for the bonds of the four defendants originally charged with the robbery, its characterization of his conduct took place in a context wherein he had not been charged in the indictment with that particular misprision but only with concealing information through the use of the polygraph test. Thus, the rejection of his Fifth Amendment claim focused on Montagna's fear of being convicted as an accessory after the fact. True, the *Daddano* court did make a brief reference to "some other related offense"; but the absence of any count in the indictment alleging that Montagna had possessed or used funds which he knew to be the fruits of a bank robbery in violation of 18 U.S.C. § 2113(c) points to a conclusion that the quoted phrase was not intended to refer to a subsection (c) violation.

■ We are satisfied that *Daddano* is factually and legally distinguishable from the instant case. Here, the facts as represented by the prosecutors are that at the time the duty to disclose arose, the defendants Kuh and Rea were simultaneously involved in criminal conduct through the knowing receipt and possession of the stolen money followed by its concealment. The object of the Fifth Amendment is to insure that a person should not be compelled to give information which might tend to show he himself has committed a crime. *Lefkowitz v. Turley,* 414 U.S. 70, 94 S.Ct.

316, 38 L.Ed.2d 274 (1973). Under the circumstances of this case, we cannot accept the argument that, although a person who fails to disclose a felony in which he might be implicated is protected from punishment by the Fifth Amendment, his failure to make known the felony, when coupled with an act of concealment, makes him susceptible to prosecution, conviction, and punishment under 18 U.S.C. § 4. If the duty to notify federal authorities is precluded by constitutional privilege, it is difficult to understand how a conviction could be substantiated. The factual allegations were and are sufficient to engender in the defendants reasonable cause to believe that disclosing information as to their knowledge of the Purolator robbery would place them in the position of furnishing the Government with evidence that could lead to their prosecution or conviction.

We agree with the district court that Count Two infringes upon the defendants' Fifth Amendment privilege and cannot be constitutionally applied to them. Our holding, however, does not carry any implication that they cannot be held criminally responsible for their conduct in knowingly accepting and burying almost half of the stolen money. Prosecution of the defendants under § 2113(c) is still available to the Government to pursue if it chooses. *United States v. Jones,* 418 F.2d 818 (8th Cir. 1969).

For the reasons stated hereinbefore, the order dismissing Count Two of the indictment is affirmed.

AFFIRMED.