UNITED STATES of America, Plaintiff,

v.

James Edward GRAHAM, a/k/a Buddy Graham, Gerald Edward Durall, Ronald Gene Durall, Defendants.

Cr. No. 80–00025–L.

United States District Court,
W. D. Kentucky,
Louisville Division.

April 24, 1980.

Albert Jones, U. S. Atty., C. Fred Partin, Asst. U. S. Atty., Louisville, Ky., for plaintiff.

Jack Lowery and Daniel Boone, Louisville, Ky., for defendant, Graham.

Michael Hatzell, Louisville, Ky., for defendant, Ronald Gene Durall.

William Allison, Louisville, Ky., for defendant, Gerald Edward Durall.

## MEMORANDUM OPINION

BALLANTINE, District Judge.

Count 1 of an indictment filed March 5, 1980, charged defendant, James Edward Graham, with concealing a person from arrest in violation of 18 U.S.C. Section 1071. Count 2 charged Graham and defendants, Gerald Edward Durall and Ronald Gene Durall, with misprision of felony in violation of 18 U.S.C. Section 4. The matter stands submitted to the Court on a number of pretrial motions by defendants. Each of these motions is considered below.

### I.

 Defendant Graham has moved for dismissal of both counts of the indictment. Graham contends that Count 1 should be dismissed because 18 U.S.C. Section 1071 was not intended to prohibit the harboring of a son by his father. The essential elements of the offense of harboring are (1) notice or knowledge by the defendant that a warrant or process has been issued for the apprehension of a person; and (2) harboring or concealment of that person by the defendant. The short answer is that the statute contains no exception for familial relationships between the harborer and the fugitive, nor have the federal courts recognized such an exception. *See United States v. Pittman,* 527 F.2d 444 (4th Cir. 1975), *cert. denied,* 424 U.S. 923, 96 S.Ct. 1123, 47 L.Ed.2d 331 (1976) (wife harbored husband); *Blankenship v. United States,* 328 F.2d 19 (5th Cir. 1964) (brother harbored brother). The motion to dismiss Count 1 of the indictment will be denied.

In support of his motion to dismiss Count 2, Graham submits that prosecution for misprision violates his Fifth Amendment privilege against self-incrimination. The four elements necessary to prove a violation of 18 U.S.C. Section 4 are: (1) commission and completion of a felony by the principal (in this case, Clyde Daniel Graham's interstate flight to avoid prosecution, 18 U.S.C. Section 1073); (2) full knowledge of that fact by the defendant; (3) failure of the defendant to notify the authorities; and (4) affirmative steps by the defendant to conceal the crime of the principal. *United States v. Stuard,* 566 F.2d 1 (6th Cir. 1977). Graham argues that disclosure to the authorities would require him to give information which could lead to his prosecution for harboring Clyde Graham, a separate criminal offense.

The relationship between the misprision statute and the Fifth Amendment was explored in detail by the Seventh Circuit in *United States v. Kuh,* 541 F.2d 672 (7th Cir. 1976). The principal offense that the defendants were charged with concealing and failing to report in *Kuh* was robbery of an armored truck en route to a federal savings and loan association, 18 U.S.C. Section 2113(b). There, as here, the defendants claimed that disclosure of the principal offense (robbery) would infringe their Fifth Amendment privilege by compelling them to give information that might tend to show their commission of a crime (possession and concealment of the stolen money, 18 U.S.C Section 2113(c)). The Court said:

". . . at the time the duty to disclose arose, the defendants Kuh and Rea were simultaneously involved in criminal conduct through the knowing receipt and possession of the stolen money followed by its concealment. The object of the Fifth Amendment is to insure that a person should not be compelled to give information which might tend to show he himself has committed a crime. *Lefkowitz v. Turley*, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973). Under the circumstances of this case, we cannot accept the argument that, although a person who fails to disclose a felony in which he might be implicated is protected from punishment by the Fifth Amendment, his failure to make known the felony, when coupled with an act of concealment, makes him susceptible to prosecution, conviction, and punishment under 18 U.S.C. § 4. If the duty to notify federal authorities is precluded by constitutional privilege, it is difficult to understand how a conviction could be substantiated. The factual allegations were and are sufficient to engender in the defendants reasonable cause to believe that disclosing information as to their knowledge of the Purolator robbery would place them in the position of furnishing the Government with evidence that could lead to their prosecution or conviction." 541 F.2d at 677.

The Court went on to hold that the misprision count of the indictment, which unconstitutionally infringed upon the defendants' Fifth Amendment privilege, was properly dismissed. A similar result was reached in *United States v. Jennings*, 603 F.2d 650 (7th Cir. 1979), and *United States v. King*, 402 F.2d 694 (9th Cir. 1968). This Court is persuaded by the holdings in the above-cited cases. According to the allegations of the indictment in the case at bar, at the time the duty to disclose arose, Graham was simultaneously involved in criminal conduct through the harboring of his son. Graham's duty to notify the authorities was therefore precluded by constitutional privilege. Accordingly, Count 2 of the indictment will be dismissed as to Graham.

## II.

Defendants Gerald and Ronald Durall have likewise moved to dismiss the misprision count against them as violative of their Fifth Amendment privilege against self-incrimination. The United States submits that defendants' Fifth Amendment claim is without merit because it is foreclosed by *United States v. Stuard, supra*; defendants were not participants in the principal crime but only witnesses to it; and defendants could not be prosecuted for harboring or aiding and abetting interstate flight.

The defendants in *Stuard* raised a Fifth Amendment claim similar to that raised here. The Sixth Circuit rejected the claim without discussion and upheld the misprision convictions. By so holding the Court implicitly approved the position taken by the United States on the self-incrimination issue in its brief in *Stuard*:

> "In the cases cited by the appellant where the Fifth Amendment was held to bar a prosecution for misprision, the information that otherwise would have been provided by the defendant would have served to make him a participant in the crime concealed. In the present case, the proof did not show the appellants to be participants in the crime, but actually victims of it."

Here, according to the statement of facts presented by the prosecution, Ronald Durall transported Clyde Graham to Drakesboro, Kentucky, provided Clyde Graham with food and clothing, lent his car to Clyde Graham, James Graham and Gerald Durall, and received money from James Graham. Gerald Durall gave Clyde Graham his driver's license, drove Clyde and James Graham from Drakesboro to Illinois, and received money from James Graham. The case at bar is clearly distinguishable from *Stuard*, since under these circumstances there can be no doubt that the Duralls were participants in the principal offense.

The privilege against self-incrimination guaranteed by the Fifth Amendment "must be confined to instances where the witness has reasonable cause to apprehend

danger from a direct answer." *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). The prosecution contends that the Duralls could not incriminate themselves by reporting the principal offense because they could not be prosecuted for aiding and abetting interstate flight (which is dependent upon approval of the Attorney General) or harboring. The United States does not explain how the Duralls could know before the fact that approval for prosecution for aiding and abetting would be denied. In any event, the Court is of the opinion that defendants could reasonably apprehend that they had violated KRS 520.120 (hindering prosecution or apprehension) by rendering assistance to Clyde Graham, who was being sought for the capital offense of murder.

■ The offense of interstate flight to avoid prosecution is complete when the fugitive crosses a state border. *Lupino v. United States*, 268 F.2d 799 (8th Cir.), *cert. denied*, 361 U.S. 834, 80 S.Ct. 86, 4 L.Ed.2d 75 (1959). It follows that the duty to disclose arose when Clyde Graham crossed the Kentucky-Illinois border. As in *Kuh*, when the duty arose, defendants were simultaneously engaging in what they could reasonably believe to be criminal conduct. Disclosure of the principal offense would compel defendants to give information which might tend to show they had committed a crime. Such a result is prohibited by the Fifth Amendment.[1] The motion to dismiss Count 2 of the indictment against the Duralls will be granted. This ruling renders the other pretrial motions submitted by Ronald and Gerald Durall moot.

### III.

■ Defendant Graham has moved, pursuant to Rule 7(f), F.R.Cr.P., for a bill of particulars. "The purpose of such a motion, which is addressed to the sound discretion of the Court, is to provide a defendant with specifics omitted from the indictment which are necessary for a preparation of his defense and the avoidance of surprise at trial." *United States v. Germain*, 411 F.Supp. 719, 727 (S.D.Ohio 1975). The test in passing on a motion for a bill of particulars is whether the defendant has enough information about the offense charged to enable him to prepare adequately for trial. 1 Wright, Federal Practice and Procedure: Criminal Section 129. The Court is of the opinion that the indictment recites with sufficient particularity the charges against which defendant will have to defend. Even if the indictment were deficient, the information called for has been provided in the discovery materials provided by the Government. The motion for a bill of particulars will be denied.

### IV.

■ Defendant Graham has also made a discovery motion. The bulk of the material sought by defendant is covered by the Reciprocal Order of Discovery entered March 19, 1980. The additional material sought falls into three categories: (1) names and addresses of witnesses, as well as witness statements; (2) physical and documentary evidence material to the preparation of the defense which the Government does not intend to introduce at trial; and (3) additional evidence subject to discovery that the Government discovers prior to trial.

■ The witness information in the first category is clearly not discoverable under Rule 16(a), F.R.Cr.P. *United States v. Conder*, 423 F.2d 904 (6th Cir.), *cert. denied*, 400 U.S. 958, 91 S.Ct. 357, 27 L.Ed.2d 267 (1970). The second category encompasses exculpatory evidence that can be termed *Brady* material. *See Brady v. Maryland*, 373 U.S.

---

1. The Court notes that the Supreme Court of the United States very recently discussed the duty to report known criminal behavior. *Roberts v. U. S.*, —— U.S. ——, 100 S.Ct. 1358, 63 L.Ed.2d 622. There the Court pointed out that "this deeply rooted social obligation is not diminished when the witness to [a] crime is involved in illicit activities himself . . .

[u]nless his silence is protected by the privilege against self-incrimination . . .." —— at U.S. ——, 100 S.Ct. at 1363. While the Court held the Fifth Amendment issue was untimely, it commented that the claim "would have merited serious consideration" had it been properly presented.

83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Government represented in open court that it was well aware of its duty under *Brady* and of its continuing duty to disclose under Rule 17(c), F.R.Cr.P. (category 3). These representations resolve the necessity of any further order concerning discovery.

Appropriate Orders have been entered this date.