[No. 27547-7-III.   Division Three.   May 13, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. KENNETH RICHARD BUDIK, *Appellant*.

124

*Janet G. Gemberling* (of *Gemberling & Dooris PS*), for appellant.

*Steven J. Tucker, Prosecuting Attorney*, and *Mark E. Lindsey* and *Andrew J. Metts III, Deputies*, for respondent.

¶1 SWEENEY, J. — This is a prosecution for rendering criminal assistance. The defendant refused to tell police the names of the assailants who shot him and shot and killed another person in his presence. He knew the names of the assailants and reported the name of an assailant to others but told police he did not know the names of the assailants. We conclude that this is sufficient evidence to support a conviction for first degree rendering criminal assistance, and we affirm the conviction.

FACTS

¶2 Titus Davis shot into the passenger side of a truck and killed the driver, Adama Walton, and injured the passenger, Kenneth Budik. Detectives arrived to investigate. Eyewitnesses saw three men standing outside Mr. Budik's side of the truck window at the time of the shooting: Freddie Miller ("Soldier"), Titus Davis ("Titus"), and Juwuan Nave ("Rascal"). All three men and Mr. Walton were known gang members. The witnesses said that Mr. Davis did the shooting and Mr. Miller provided the transportation.

¶3 Police talked to Mr. Budik. He said he did not know who shot him. In fact, he gave little information and appeared hostile. Mr. Budik did tell the officers that Mr. Walton was driving. Police found a spent casing in the cab of the truck; this suggested that the shooter shot inside the truck in full view of Mr. Budik. The detective concluded from this that Mr. Budik knew more than he was saying. The detective attributed his difficulty with his investigation to the general fear within the community of gang members and suspicion of law enforcement.

¶4 Police also interviewed Mr. Budik again at the hospital. There Mr. Budik told the detectives that he and Mr. Walton had spent the last few hours before the incident at a nightclub and a house party. And as they were leaving the party in Mr. Walton's truck, he bent over to get his drink. Someone shot several rounds into the truck through the open passenger window. Mr. Walton then hit the accelerator and drove straight into several parked cars and the truck overturned. Mr. Budik again told a detective that he did not see who did the shooting.

¶5 Mr. Budik spoke with Rae Walton, Mr. Walton's mother, two days after the shooting and told her that "Rascal [Juwuan Nave] did it." Report of Proceedings (RP) at 121. Ms. Walton reported this to police. And the State then charged Mr. Budik with one count of first degree

rendering criminal assistance. The State also charged both Mr. Davis and Mr. Miller with murder. There was no direct evidence against Mr. Nave so he has not been charged.

¶6 At trial, a detective testified that the investigation would "have been able to take a different turn" had Mr. Budik told law enforcement what he told Ms. Walton. RP at 184. Mr. Budik acknowledged that he talked to Ms. Walton on the phone but denied giving her names. Mr. Budik testified he never attempted to mislead authorities or send them in the wrong direction.

¶7 The jury convicted Mr. Budik as charged.

## DISCUSSION

SUFFICIENCY OF THE EVIDENCE

¶8 Mr. Budik first argues that there is no showing that he intended to prevent the apprehension of the assailants. Instead, he argues, "The State presented substantial evidence that Mr. Budik, if he knew his assailant's identity, feared retaliation if he disclosed their identity and his intent was to prevent such retaliation." Appellant's Br. at 10. Further, even if Mr. Budik did intend to prevent the apprehension of the assailants, there is no evidence officers relied on the statement or that it actually hindered the police investigation in any way. Finally, Mr. Budik contends that his refusal to give information to police is not and should not be a crime because the constitution protects his right not to speak at all.

¶9 Both parties suggest "substantial evidence" as the standard that should govern our review (Appellant's Br. at 10; Resp't's Br. at 2); that is, whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Treat*, 109 Wn. App. 419, 426, 35 P.3d 1192 (2001). But the essential questions before us are, first, whether the State can criminalize Mr. Budik's conduct, and, second, if it can, does the statute here, RCW 9A.76.070 (first degree rendering criminal assistance) do so. Those are questions of law that

we will review de novo. *State v. Jackman*, 156 Wn.2d 736, 746, 132 P.3d 136 (2006).

¶10 "A person is guilty of rendering criminal assistance in the first degree if he . . . renders criminal assistance to a person who has committed or is being sought for murder in the first degree or any class A felony or equivalent juvenile offense." RCW 9A.76.070(1). "Rendering criminal assistance" is defined in relevant part as

> with intent to prevent, hinder, or delay the apprehension or prosecution of another person who he knows has committed a crime . . . or is being sought by law enforcement officials for the commission of a crime . . . , he:
>
> . . . .
>
> (4) Prevents or obstructs, by use of force, deception, or threat, anyone from performing an act that might aid in the discovery or apprehension of such person.

RCW 9A.76.050.

¶11 Here, Mr. Budik told police that he did not know who the assailants were. That was not true. And, while Mr. Budik may not have had any obligation to speak, we conclude that, if he chose to speak, he was not privileged to mislead police. The State showed that Mr. Budik told Ms. Walton a few days after these crimes that both "Rascal" and "Soldier" were involved. RP at 121. An eyewitness told a detective that "Rascal" and "Soldier" were at the party. Police did not suspect Mr. Budik of these crimes. He was not the focus of their investigation. And so the questions were not calculated to incriminate him. And he does not argue otherwise. He argues simply that he has a constitutional right not to speak. Again, while that may be true, his right not to speak is not at issue here.

¶12 Mr. Budik also argues that the evidence showed only that he "feared retaliation if he disclosed [the assailants'] identity and his intent was to prevent such retaliation." Appellant's Br. at 10. And while that may be his motive, the jury could infer that his intent was then to prevent, hinder, or delay the apprehension and prosecution of the murderers

here. *See State v. Tharp*, 96 Wn.2d 591, 597, 637 P.2d 961 (1981); *State v. Powell*, 126 Wn.2d 244, 260-61, 893 P.2d 615 (1995). Mr. Budik argues that "the mere making of a false statement is insufficient to establish deception for the purpose of hindering a public servant; it must be one upon which the public servant is likely to rely." Appellant's Br. at 8. He contends that here there is no evidence that police relied on his statements or were prevented from any action based on Mr. Budik's assertion that he did not know the identity of the shooter. Nothing in the statute requires an officer to rely on the deception. Indeed, here there is nothing to rely on because he lied to police when he said he did not know the assailants and, by doing so, hindered their ability to solve this crime. And the jury so found.

¶13 A detective testified that the investigation would "have been able to take a different turn" had Mr. Budik provided police with the same information he gave Ms. Walton. RP at 184. And he also testified that it would have been helpful to have an eyewitness who could say that Mr. Nave was or was not involved in the shooting. Further, it would have been helpful to police to learn immediately who may have been involved in the shooting, rather than have to spend several days interviewing other eyewitnesses. This is enough to support the elements of first degree rendering criminal assistance.

¶14 Mr. Budik contends that he did not have to answer police questions. He argues that his refusal to provide information to a police officer was not a crime and that he had constitutional rights to refrain from speaking at all. The State responds that the cases cited by Mr. Budik in support of his position are distinguishable because those cases addressed the constitutional propriety of questioning that may incriminate the defendant. For example, in *Brown v. Texas*, cited by Mr. Budik, the defendant refused to provide identifying information to police that could have been used to incriminate the defendant. 443 U.S. 47, 48-49, 99 S. Ct. 2637, 61 L. Ed. 2d 357 (1979). The Supreme Court held that in the absence of any reasonable suspicion that the defen-

dant was engaged in criminal conduct, the police had no basis to request the defendant's identification. *Id.* at 52.

¶15 We agree with the State. The line of cases cited by Mr. Budik is not helpful here. Police could not compel Mr. Budik to be a witness against himself. *City of Seattle v. Stalsbroten,* 138 Wn.2d 227, 235-36, 978 P.2d 1059 (1999). But they were not asking questions that would tend to incriminate him. *See United States v. Kuh,* 541 F.2d 672, 677 (7th Cir. 1976) (privilege against self-incrimination is to ensure that a person should not be compelled to give information that might tend to show he himself has committed a crime). He was not the focus of the investigation and he does not claim otherwise. Police were investigating a murder and assault committed by others. Mr. Budik was not a suspect or under arrest when asked questions by the police. He was a victim of the crime. The information sought by police would not have incriminated Mr. Budik. The State is not prosecuting Mr. Budik for exercising his right to remain silent. It is prosecuting him for lying to police about these crimes.

¶16 He had no constitutional right to lie and thereby mislead police about what he knew of these crimes. *Hoffman v. United States,* 341 U.S. 479, 486, 71 S. Ct. 814, 95 L. Ed. 1118 (1951) (confining privilege against self-incrimination to instances where the witness has reasonable cause to apprehend danger from a direct answer). This is not a "stop and identify" statute condemned in *State v. White.*[1] The right to be let alone may be inviolate, but there is no right to deliberately mislead police. *White,* 97 Wn.2d at 99.

INEFFECTIVE ASSISTANCE OF COUNSEL—DURESS

¶17 Mr. Budik next contends that his lawyer provided ineffective assistance by failing to request a jury instruction on duress.

---

[1] *State v. White,* 97 Wn.2d 92, 96-97, 640 P.2d 1061 (1982).

¶18 He must show that his lawyer's performance fell below an objective standard of reasonableness, and that he was prejudiced. *See State v. Brockob*, 159 Wn.2d 311, 344-45, 150 P.3d 59 (2006); *see also Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). We presume that counsel's representation was effective. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). This presumption will be overcome only by a clear showing of incompetence. *State v. Varga*, 151 Wn.2d 179, 199, 86 P.3d 139 (2004). The defendant must then show that there were no legitimate strategic or tactical reasons for counsel's action or inaction. *McFarland*, 127 Wn.2d at 336. Here that inaction is the failure to request an instruction on duress.

¶19 "A defendant is entitled to a jury instruction supporting his theory of the case if there is substantial evidence in the record supporting his theory." *State v. Powell*, 150 Wn. App. 139, 154, 206 P.3d 703 (2009). The first question is whether Mr. Budik was entitled to an instruction on duress; the second is whether failure to request the instruction was a legitimate tactical decision. *Id.* at 154-55. Duress is a defense to a crime. The defendant must show that he was motivated to participate in the crime because of apprehension of immediate death or immediate grievous bodily harm. RCW 9A.16.060(1).

¶20 Our first inquiry is whether Mr. Budik would have been entitled to a jury instruction had his attorney asked for one. *See Powell*, 150 Wn. App. at 154. There is some evidence that Mr. Budik may have feared for his safety or the safety of his family after this incident. But there is no evidence that Mr. Budik was threatened by anyone. And so there is certainly nothing in this record to support a reasonable apprehension of immediate death or grievous bodily injury had he cooperated. And without that he is not entitled to a duress defense. *See State v. Mannering*, 150 Wn.2d 277, 286, 75 P.3d 961 (2003). We conclude then that the instruction should not have been given and therefore would not have been given even if requested.

¶21 Moreover, Mr. Budik's strategy was to show that he did not know who shot him and, therefore, he did not deceive law enforcement. So, while a claim of duress might have been a plausible approach at trial, it was not the approach Mr. Budik chose. That was a legitimate trial strategy. *See id.* at 286-87 (failure to pursue duress defense was strategic, as chosen defense was lack of intent to commit the crime, and pursuing duress defense would have required defense to admit all elements of the crime, which would have been inconsistent with chosen defense).

¶22 Indeed, a duress defense would have required that Mr. Budik show he lied to law enforcement, but only because he was threatened. *See* RCW 9A.16.060(1). Clearly, defense counsel made a tactical decision. He elected to undermine the State's showing that Mr. Budik lied to officers. A claim of duress would have damaged his credibility and undermined that defense. Defense counsel's failure to request a duress instruction was a legitimate tactical decision. This is not deficient performance.

¶23 We affirm the conviction.

KULIK, C.J., and BROWN, J., concur.

Review granted at 170 Wn.2d 1008 (2010).