## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 26 2018, 7:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robin Kraemer,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | June 26, 2018<br>Court of Appeals Case No.<br>84A01-1711-CR-2703<br>Appeal from the Vigo Superior<br>Court<br>The Honorable Michael J. Lewis,<br>Judge<br>Trial Court Cause No.<br>84D06-1702-F1-563 |

**Altice, Judge.**

## Case Summary

[1] Following a jury trial, Robin Lee Kraemer was convicted of neglect of a dependent resulting in death, a Level 1 felony; failure to report, a Class B misdemeanor; four counts of neglect of a dependent as Level 6 felonies; maintaining a common nuisance, a Level 6 felony; and visiting a common nuisance, a Class A misdemeanor. Kraemer was sentenced to an aggregate term of 36.5 years imprisonment. On appeal, Kraemer presents three issues for our review, which we restate as follows:

> 1. Does Kraemer's conviction for failure to report abuse or neglect of a child violate her federal and state constitutional privilege against self-incrimination?

> 2. Did the State present sufficient evidence to support Kraemer's conviction for Class A misdemeanor visiting a common nuisance?

> 3. Do Kraemer's convictions for neglect of a dependent based on her use of methamphetamine violate principles of double jeopardy?

[2] We affirm in part, reverse in part, and remand with instructions.

## Facts & Procedural History

[3] C.H. was born on August 21, 2007. Kraemer was his guardian and cared for C.H. since he was three days old. After his birth, C.H. was diagnosed with several brain disorders, collectively described as cerebral palsy. C.H. was

completely dependent on Kraemer for his daily needs, including feeding, bathing, and physical/occupational therapy. C.H. was also blind and developed seizures, for which his physician, Dr. Pablito Dela Cruz, prescribed an anticonvulsant that proved beneficial. Because C.H. had increased muscle tone in his extremities, his body was stiff and not easy to move thus necessitating physical and occupational therapy from an early age.

[4] Given C.H.'s condition, Dr. Dela Cruz wanted C.H. to ultimately achieve and maintain a weight of between twenty-two and twenty-five pounds. When it became apparent that C.H. was not gaining weight appropriately, Dr. Dela Cruz diagnosed him as failure to thrive and recommended supplementation. In June 2014, C.H. weighed twenty-two pounds. Dr. Dela Cruz became concerned when less than three months later C.H.'s weight had decreased to nineteen pounds. Dr. Dela Cruz referred C.H. to a gastroenterologist at Riley Children's Hospital in Indianapolis. Based on results from blood work, C.H. was seen in the emergency room at Riley on September 9, 2014. Upon his release, he was directed to follow up with Dr. Dela Cruz in two weeks. C.H., however, was not seen by Dr. Dela Cruz until June 2015, at which time, he weighed twenty-four pounds. At this appointment, Dr. Dela Cruz refilled three different prescriptions for C.H. and recommended continuation of physical and occupational therapy. He also requested a follow-up with C.H. in four months, which never occurred.

[5] According to Kraemer, around 1:00 a.m. on February 21, 2017, she woke up and went to make something to eat. C.H. also woke up, so she made him a

bottle of formula, which he would not eat. Kraemer changed C.H.'s diaper, noting that it was wet, but not saturated. She noticed nothing unusual about C.H.'s breathing, and C.H. eventually went back to sleep. Around 3:00 a.m. Kraemer awoke again and discovered that C.H. was not breathing. Kraemer called 911, and her husband began resuscitation efforts.

[6] Vigo County Sheriff's Deputy Dayton Huebner responded to the emergency call and, upon arrival, encountered Kraemer, who was "hysterical and crying." *Transcript Vol. 2* at 35. Kraemer informed Deputy Huebner that C.H. had been sick and spontaneously told him that C.H. had a nine-year life expectancy. En route to the hospital, paramedics ceased attempts to resuscitate C.H., and he was declared dead upon arrival.

[7] Jim Hayne, an emergency room nurse at Terre Haute Union Hospital, conducted a post-mortem assessment of C.H. in which he found no signs of trauma to C.H.'s body, no skin breakdown, and no bedsores. Nurse Hayne noted, however, "extreme dehydration," that C.H. had sunken eyes, and that he had been dead for "quite awhile." *Id.* at 82. He also noted that C.H. was "severely emaciated" and documented that C.H., then nine and a half years old, weighed approximately fifteen pounds. *Id.* at 86. Nurse Hayne testified that he had been in the military and had seen malnourished children in other countries, but that C.H. presented the "worst" case of malnutrition he had ever seen. *Id.* at 93.

[8] Jason Fischer, a detective with the Vigo County Sheriff's Department, spoke with Kraemer at the hospital, and one of the first things she stated was that C.H. had a nine-year life expectancy. Kraemer also informed Detective Fischer that C.H. had been sick with the flu, although she admitted that he had not been to a doctor in over a year. Detective Fischer permitted Kraemer to leave the hospital before he had the opportunity to view C.H.'s body. He then went to see C.H. and testified that he was unprepared for what he saw, describing C.H. as a "small, small child" who looked like "a skeleton with skin stretched over it." *Id.* at 46. The sight of C.H. in such an emaciated state was "something [Detective Fischer had] never seen before." *Id.* Based on his observations, Detective Fischer immediately contacted the Department of Child Services (DCS) and opened a criminal investigation.

[9] Erin Gonthier, a family case manager (FCM) with DCS, arrived at Union Hospital just before 7:00 a.m. She was taken to see C.H. and noted that what she observed was "very alarming and very concerning" in that it appeared that C.H. had been neglected because he appeared "severely emaciated." *Id.* at 103, 102. FCM Gonthier and Detective Fischer then went to Kraemer's home, which Kraemer shared with her husband. At that time, Kraemer's son, his girlfriend, and their two children, five-year-old L.K. and two-year-old L.K. (Grandchildren), also lived in Kraemer's home.

[10] FCM Gonthier approached Kraemer in the driveway, and initially, Kraemer was cooperative. When FCM Gonthier asked her to submit to a drug screen, Kraemer "immediately became defensive and combative," yelled at FCM

Gonthier, refused to submit to the drug screen, and told FCM Gonthier to leave. *Id.* at 108. The other adults in the home, especially Kraemer's son, were also belligerent toward FCM Gonthier. Eventually, Kraemer submitted to a drug screen, which was positive for amphetamines, methamphetamine, and THC. A sample of Kraemer's Grandchildren's hair follicles tested positive for methamphetamine. Given the test that was run, it was not possible that the children were merely exposed to methamphetamine through use by others. The test established that the children had methamphetamine in their systems.

[11] Dr. Roland Kohr performed an autopsy of C.H. Dr. Kohr noted that at the time of his death, C.H. weighed approximately fifteen pounds and had a severe lack of muscle mass, which condition had most likely developed over several months. He described C.H.'s condition as "by far the most extreme loss of tissue and lack of normal nutrition" he had ever seen. *Transcript Vol. 3* at 7. Toxicology testing revealed that C.H. had trace amounts of methamphetamine in his system. Dr. Kohr ultimately concluded that C.H. died as the result of severe malnutrition with bronchopneumonia as a contributing cause.

[12] On March 15, 2017, the State charged Kraemer with Count I, Level 1 felony neglect of a dependent resulting in death; Count II, Level 3 felony neglect of a dependent resulting in serious bodily injury; Count III, Class B misdemeanor failure to make a report; Count IV, Level 6 felony neglect of a dependent; Count V, Level 6 felony neglect of a dependent; Count VI, Level 6 felony maintaining a common nuisance; Count VII, Class A misdemeanor visiting a common nuisance; and Counts VIII and IX, Level 6 felony neglect of a

dependent.[1]  A four-day jury trial commenced on September 18, 2017, at the conclusion of which the jury found Kraemer guilty as charged.  On October 19, 2017, the trial court merged Count II with Count I, and entered judgments of conviction on the remaining offenses.  The trial court sentenced Kraemer to the advisory sentence of thirty years on Count I; 180 days on Count III, and one year on each Level 6 felony and the Class A misdemeanor.  The court ordered the sentences be served consecutively for an aggregate sentence of 36.5 years imprisonment.  Kraemer now appeals.  Additional facts will be provided as necessary.

## Discussion & Decision

## Constitutional Right

[13]  Kraemer argues that prosecuting her for failure to report her own child abuse or neglect violated her federal and state constitutional right against compulsory self-incrimination.  *See* U.S. Const. amend. V; Ind. Const. art. 1, section 14 .  This privilege "protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used."  *Kastigar v. U.S.*, 406 U.S. 441, 445 (1972).  Kraemer maintains that "the State used [her] failure to incriminate herself not just to imply guilt, but as the sole evidence to establish guilt for failing to report."  *Appellant's Brief* at 11.  Acknowledging that she did not file a motion to dismiss

---

[1] In Counts VIII and IX, Kraemer's Grandchildren were the alleged victims.

alleging the constitutional challenge she presents on appeal, Kraemer asserts that her challenge amounts to fundamental error.

[14] "Generally, the failure to file a proper motion to dismiss raising the Constitutional challenge waives the issue on appeal." *Baumgartner v. State*, 891 N.E.2d 1131, 1135-36 (Ind. Ct. App. 2008). Still, some cases have considered challenges to the constitutionality of statutes even where the defendant failed to file a motion to dismiss. Notably, in *Morse v. State*, 593 N.E.2d 194, 197 (Ind. 1992), the court addressed the defendant's challenge to the constitutionality of a statute even though the issue was raised for the first time on appeal in a pro se motion filed with the court by a defendant who was represented by counsel. *See also Vaughn v. State*, 782 N.E.2d 417, 420 (Ind. Ct. App. 2003) (citing *Morse* in deciding to address defendant's challenge to constitutionality of statute even though defendant filed no motion to dismiss and State argued waiver on appeal), *trans. denied*; *Boyd v. State*, 889 N.E.2d 321, 323-24 (Ind. Ct. App. 2008) (following *Morse* and *Vaughn* in choosing to address defendant's claim that statute was unconstitutionally vague even though he did not file proper motion to dismiss and the State argued waiver on appeal), *trans. denied*.

[15] Ind. Code § 31-33-5-1 imposes a duty upon an individual "who has reason to believe that a child is a victim of child abuse or neglect" to "make a report" of such abuse or neglect. A person who fails to make a report as required under I.C. § 31-33-5-1 commits a Class B misdemeanor. In this case, the charging information simply tracked the statutory language and did not specify the abuse

or neglect that Kraemer failed to report. During closing argument, however, the prosecutor argued to the jury as follows:

> Failure to make a report. [Kraemer] being required to make a report failed to do so. Gonna get the instruction related to the Indiana code that says that an individual who has reason to believe [t]hat a child is a victim of child abuse or neglect has to make a report. . . . [Kraemer] wasn't gonna make any report. She was the one doing the meth, she was the one smoking the marijuana. There was no report made.

*Transcript Vol. 3* at 230.

[16] We acknowledge that the State presented evidence concerning neglect or abuse of Kraemer's Grandchildren by their parents who chose to use methamphetamine and who exposed the children to the dangers of the drug. We cannot agree with the State, however, that the jury was asked to find Kraemer guilty for failing to report such neglect. As we read the State's closing argument, the jury was asked to find Kraemer guilty of failing to report her own neglect based upon her own use of methamphetamine. The State's prosecution of Kraemer in this regard directly conflicts with her constitutional privilege against self-incrimination. *See, e.g., U.S. v. Kuh*, 541 F.2d 672 (7th Cir. 1976) (noting that "[t]he object of the Fifth Amendment is to insure that a person should not be compelled to give information which might tend to show he himself has committed a crime").

[17] The State asserts that there is nothing in the statute itself that exempts a person with knowledge of child abuse or neglect from the duty to make a report to

DCS or local law enforcement. Regardless, we conclude that the federal and state constitutions render invalid Kraemer's conviction for failure to report her own abuse. We direct the trial court to vacate Kraemer's conviction and sentence for failure to report as a Class B misdemeanor.

**Sufficiency of the Evidence**

[18] Kraemer next argues that the State failed to present sufficient evidence to support her conviction for visiting a common nuisance with C.H. When we consider a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor assess the credibility of the witnesses. *Suggs v. State*, 51 N.E.3d 1190, 1193 (Ind. 2016). Instead, we consider only the evidence and reasonable inferences supporting the verdict. *Id*. We will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id*.

[19] Pursuant to Ind. Code § 35-45-1-5(a)(3)(A), a common nuisance is defined, in pertinent part, as "a building, structure, vehicle, or other place that is used . . . to unlawfully use a controlled substance or an item of drug paraphernalia." A person who "knowingly or intentionally *visits* a common nuisance . . . commits visiting a common nuisance." I.C. § 35-45-1-5(b) (emphasis supplied). The offense is a Class A misdemeanor if the person "knowingly, intentionally, or recklessly takes a person less than eighteen (18) years of age . . . into a common nuisance." I.C. § 35-45-1-5(b)(2)(B). Here, the State charged Kraemer with visiting a common nuisance as a Class A misdemeanor, alleging that she

knowingly, intentionally, or recklessly took C.H. to visit a common nuisance, i.e., the home in which they lived. Kraemer does not dispute that her home is a common nuisance. Rather, Kraemer argues that because C.H. lived in her home, she cannot be found to have taken him to visit his own home. The State asserts that "[t]here can be no dispute that [Kraemer] took C.H. into her home." *Appellee's Brief* at 16.

[20] We agree with Kraemer. It is not enough that Kraemer took C.H. into their home. The notion of a visit remains a key element to the offense of visiting a common nuisance. Thus, the issue before us is what does it mean to "visit" a common nuisance. In its most common connotation, to visit a place is to come and go and stay for a short time period of time. We think it is a stretch to say that one visits his own home. As Kraemer asserts, the State did not present any evidence that she used methamphetamine outside of her home or that she took C.H. into a common nuisance that was not their home. We thus conclude that the State's evidence is insufficient to support Kraemer's conviction for visiting a common nuisance as a Class A misdemeanor.[2] We direct the trial court to vacate Kraemer's conviction and sentence for this offense.

## Double Jeopardy

[21] Indiana's Double Jeopardy Clause was intended to prevent the State from being able to proceed against a person twice for the same criminal transgression.

---

[2] Kraemer's conviction for maintaining a common nuisance as a Level 6 felony is unaffected.

*Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). This clause prohibits, among other things, multiple punishments for the same conduct. *Jarrell v. State*, 818 N.E.2d 88, 92 (Ind. Ct. App. 2004). Multiple punishments are for the same offense in violation of double jeopardy, "if, with respect to . . . the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id*.

[22] In Count IV, the State charged Kraemer with neglect of a dependent based on the fact that she knowingly placed C.H. in a situation that endangered his life or health as evidenced by the fact that she tested positive for methamphetamine and THC. In Count V, the State charged Kramer with the same offense, but alleged that she placed C.H. in a situation that endangered his life or health as evidenced by the fact that at the time of his autopsy, C.H. tested positive for methamphetamine. Kraemer argues these convictions violate double jeopardy principles in that they "arose from a single criminal transgression."[3] *Appellant's Brief* at 16. We agree. The basis for the neglect convictions under both Counts IV and V is Kraemer's use of illegal drugs in her home which placed C.H. in a situation that endangered his life or health. Double jeopardy principles prohibit multiple punishments for the same conduct. *Cf. Williams v. State*, 829 N.E.2d 198 (finding multiple convictions for neglect of a dependent did not violate double jeopardy principles where the State proved five distinct acts occurring at

---

[3] Kraemer does not challenge her Level 6 felony neglect convictions with regard to separate victims.

different times).  We therefore direct the trial court to reverse Kraemer's conviction and sentence for neglect of a dependent under Count IV.

[23]   In sum, we reverse Kraemer's convictions for failure to report (Count III), visiting a common nuisance (Count VII), and neglect of a dependent (Count IV) and direct the trial court to vacate the convictions and sentences thereon.

[24]   Judgment affirmed in part, reversed in part, and remanded with instructions.

Najam, J. and Robb, J., concur.