**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Bob David JACK, Defendant-Appellant.**

No. 81–1583
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 1, 1982.

Lucius D. Bunton, Jr., Austin, Tex. (Court-appointed), for defendant-appellant.

Sidney Powell, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before GEE, RANDALL and TATE, Circuit Judges.

TATE, Circuit Judge:

The defendant, Bob David Jack, was indicted by a federal grand jury and charged with possession of phenyl-2-propanone with intent to manufacture methamphetamine in violation of 21 U.S.C. § 841(a)(1), and conspiracy to possess phenyl-2-propanone with intent to manufacture methamphetamine in violation of 21 U.S.C. § 846. Pursuant to an agreement with the prosecution, the defendant pled guilty to both counts. He now appeals, asserting that the guilty plea is constitutionally infirm because he was not informed of the element of intent-to-manufacture essential to the crime. He further alleges that there was an insufficient finding by the district court of a factual basis for the plea. We find no error in the district court's acceptance of the guilty plea

and, therefore, we affirm. However, we find that the special parole sentence was improperly imposed as to the conspiracy charge and, therefore, we remand with instructions that the judgment be amended to delete this special parole term.

## I. *The Factual Background*

The defendant, Bob David Jack, was present with co-conspirators and participated in negotiations with an undercover agent on February 3, 1981 concerning the purchase of approximately 30 gallons of phenyl-2-propanone (P2P), a Schedule II controlled substance. This meeting also included the proposed manufacture of methamphetamine.. Pursuant to the negotiations, a pint of P2P was transferred from the agent to Jack with the intent that methamphetamine would be manufactured therefrom. Jack was subsequently apprehended, indicted, and arraigned.

At the arraignment hearing, Jack was directly addressed by the judge in open court and questioned as to his participation in the alleged criminal activities. The indictment, stating the details of the offenses with particularity, was read in open court, and Jack thereupon admitted his guilt. He acknowledged that he had received a copy of the indictment, had read and had discussed the same with his attorney, understood the charges, and had committed all of the acts stated in the indictment.[1]

1. THE COURT: Do you believe that he has the factual as well as a rational understanding of the proceedings against him?
   ATTORNEY FOR DEFENDANT: Yes, sir; he does.

   \*　\*　\*　\*　\*　·　\*

   THE COURT: You are pleading guilty because you are guilty and for no other reason?
   DEFENDANT: Yes, sir.
   THE COURT: Now, have you read a copy of the indictment naming you?
   DEFENDANT: Yes, sir; I have.
   THE COURT: Have you received a copy?
   DEFENDANT: Yes, sir.
   THE COURT: Have you read it?
   DEFENDANT: Yes, sir; I have.
   THE COURT: And, have you discussed with your lawyer the charges in the indictment to which you intend to plead guilty?
   DEFENDANT: Yes, sir; I have.

   THE COURT: Do you understand the charge?
   DEFENDANT: Yes, sir.
   THE COURT: Do you have any questions concerning the charge?
   DEFENDANT: No, sir.

   \*　\*　\*　\*　\*　\*

   THE COURT: Now, I am going to read count one and count two of the indictment: "That beginning on or about December 18, 1980, and continuing until February 13, 1981, in the Northern and Western Districts of Texas and diverse other places to the Grand Jurors unknown, the Defendant Bob David Jack, and other persons to the Grand Jury unknown, unlawfully and willfully and knowingly did combine and conspire, confederate and agree together and with each other to possess Phenyl 2 Propanone, a schedule two controlled substance with the intent to manufacture methamphetamine, the same contrary to Ti-

The prosecution at the request of the court, then summarized the evidence that would be introduced against the defendant were the case to go to trial. Jack admitted that this factual summary was an accurate representation of his participation in the crimes.[2]

The court accepted the guilty plea. At the sentencing hearing, some two months after the plea of guilty had been accepted, Jack for the first time made a statement minimizing his involvement in the offenses.[3] He stated that he had become involved because he was lending money to a friend in

order for the deal to take place. He stated that he was present only to be sure that the loaned money was properly handled. Although not explicitly so stated at the time, the effect of this belated explanation is now contended as showing there was no factual basis to support a finding that Jack joined in a conspiracy or possession with intent to *manufacture* an illegal substance.

The court sentenced the defendant Jack to five years imprisonment for each count with a five-year special parole term appended to each count, the sentences to run consecutively.

---

tle 21 U.S.Code Section 841(a), (2), (1), in violation of Title 21 of U.S.Code Section 846 and effect the objects of said conspiracy the following overt acts were committed . . . ." Now, count two. "That on or about February 3, 1981, in the Western District of Texas, the Defendant Bob David Jack and Weldon Harris Grieder, Jr. unlawfully and knowingly and intentionally did possess with the intent to manufacture methamphetamine approximately one pint . . . ."—Concerning count one and count two of the indictment I have read to you, is that what you did and is that what you are pleading to?

DEFENDANT: Yes, sir; it is.

2. THE COURT: Now, I will ask the Government what in summary would be the evidence as to these two counts in the indictment?

MR. PIERCE: Your Honor, if this case were to go to trial, the Government would establish that between the dates alleged between December 18, 1980, and February 13, 1981, this Defendant Bob David Jack and his Co-defendants Grieder and Crump were attempting to obtain a quantity of P2P for the purpose of manufacturing methamphetamine. DEA Agent Louis Recrulis (phonetic) acting in an undercover capacity learned of this attempt to acquire P2P and on January 21, 1981, met with Co-defendant Crump. Mr. Recrulis advised Crump that he was in the chemical business and had P2P available and would provide it. Mr. Crump said that he had some friends who would desire to purchase up to thirty gallons of P2P for the purpose of manufacturing methamphetamine. On February 3, 1981, DEA undercover Officer Recrulis did meet these other individuals—that was Co-defendant Grieder and this Defendant Jack. DEA Agent Recrulis negotiated directly with Mr. Jack for a quantity of P2P and agreed to provide approximately one pint of P2P at that time in return for some methamphetamine to be furnished at a later date. Special Agent Recrulis did in fact produce one pint of P2P to Mr. Jack and Mr. Grieder, and they transported it to San Antonio, but observed

law enforcement surveillance, and they stashed the bottle of P2P near Johnson City, Texas, in Blanco County.

THE COURT: Thank you, Mr. Pierce. Mr. Jack, do you agree with the prosecution's summary of what you did?

MR. JACK: Yes, sir.

THE COURT: Then the Court finds that the Defendant's plea is freely and voluntarily made, and the defendant fully understands the charges and the penalties. That the Defendant understands his Constitutional rights and desires to waive them. The Defendant is competent to stand trial, and there is a factual basis for the plea.

3. MR. JACK: In reference to this instant case, I became involved in that particular delivery about ten hours before the delivery that morning. Mr. Grieder came to me and asked to borrow some money to purchase the pint of P2P. And, I agreed to loan him the money, but not to give it to him because he had not done well on his past loans. So, I went with him to Junction, and then to Sonora, and gave him the money, and he went inside and negotiated with the agent, and Mr. Crump and I later negotiated with the agent and verified the story that he had told the agent about six ounce return for the bottle if he fronted it to him rather him purchasing the bottle outright. On the way to Sonora, there was never any attempt for the bottle to be fronted with the promise of the return of drugs, and it was supposed to be a purchase of $2500. And, Mr. Grieder also—for $5,000, he allegedly got back to San Antonio. This was the second or the third purchase of Phenyl for Mr. Grieder and Mr. Crump. One other time I was present, and one time I was not present. No drugs were exchanged. It was strictly a cash purchase by Mr. Grieder from Mr. Crump and two other gentlemen. Other than that, the official version is about correct.

Before us, the defendant Jack now contends that the guilty plea was improperly taken in that (1) the factual basis for the plea is not shown and (2) he was not informed that his action required an intent to *manufacture* the illegal substance in order for him to be guilty of the offense.

## II. *The Standard of Review in Federal Plea Bargaining Cases*

Fed.R.Cr.P. 11 requires, among other things, that the trial court directly address the defendant in open court to ascertain that he understands the nature of the charges and the consequences of his plea. A guilty plea is not voluntary unless the defendant has been informed of the nature of his crime, and therefore knows to what he is pleading guilty, *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). It is also required that the court make a finding that there is a sufficient factual basis for the plea, *McCarthy, supra* 89 S.Ct. at 1171, *United States v. Montoya-Camacho*, 644 F.2d 480 (5th Cir. 1981); *United States v. Dayton*, 604 F.2d 931, (5th Cir.) (en banc) *cert. denied*, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980).

In *United States v. Dayton*, 604 F.2d 931 (5th Cir. 1979), this court, en banc, established guidelines for the future application of Rule 11. A court accepting a guilty plea is to determine, "to its subjective satisfaction," that the requirements of the rule have been met. An acceptance by the court of the defendant's guilty plea will be deemed to be a factual finding on each of these requirements, and will be reviewable under the clearly erroneous standard. *Dayton*, 604 F.2d at 940–941.

## III. *The District Court's Finding Were Not Clearly Erroneous*

The facts in *United States v. Dayton, supra*, are similar to those presented in the instant case. That case dealt with the acceptance of a guilty plea for the similar crime of possession of a forbidden drug with the intent to *distribute*. In addition, that case involved an arraignment colloquy very similar to the one in the instant case. Because of these similarities, the application of that case to the present one seems particularly appropriate. The court stated:

As for the ... requirement—that the judge personally inform the defendant of the nature of the charge and determine that he understands it—we are unable to state a simple or mechanical rule but offer some general observations that we hope will be helpful. For simple charges such as those in this case, a reading of the indictment, followed by an opportunity given the defendant to ask questions about it, will usually suffice.... We can do no more than commit these matters to the good judgment of the court, to its calculation of the relative difficulty of comprehension of the charges and of the defendant's sophistication and intelligence....

The charges to which Dayton pled are simple. We do not think that a sane adult, which no one disputes Dayton was, needs to be told further what he is accused of after hearing it charged that on a specific date, at a place within the court's jurisdiction, he illegally possessed a specific amount of a named forbidden drug with intent to distribute it. Thus, the reading of *this* indictment, followed by an offer by the judge to answer any questions Dayton might have about it, was a satisfactory and sufficient explanation of the nature of this charge. His response that he understood and had no questions ... was likewise a sufficient assurance in these circumstances.

Likewise, the narration by the prosecutor, on the record, in the presence of the judge and the defendant, and at the specific request and direction of the judge, of what he meant to prove against Dayton ... and Dayton's sworn response that he had done [the acts] and could be proven to have done so beyond a reasonable doubt established a factual basis for his plea that the judge could properly deem satisfactory.

604 F.2d at 937–38, 942–43 (emphasis in original).

In the instant case, the trial court judge read the indictment in open court. He further ascertained that the defendant Jack had received a copy of the indictment, and had read this copy; that he had discussed the charges with his attorney and that he understood these charges; and that he had no further questions. Upon request, the prosecution then stated the evidence that it would introduce at trial. Jack admitted his participation in the stated activities, in which the prosecutor described him as being one of the three principals seeking to acquire the P2P chemical for the purpose of manufacturing the illegal drug (see note 2), as charged by the indictment. The trial court thereupon stated that it was satisfied that the defendant understood the charges and that he was satisfied that there was a factual basis for the plea.

Under these facts, we cannot say that the court's finding of a knowing and voluntary guilty-plea was clearly erroneous.

One further contention of Jack should be noted. When he returned to the court for the sentencing hearing, some two months after his fully voluntary plea, Jack made a brief statement explaining his involvement in the narcotics transaction. Without denying his guilt, he stated that he had participated in the negotiations in order to insure that the loan made by him for the purchase of P2P was actually used for that purpose. He now contends that this statement negates the existence of a sufficient factual basis for the plea.

In this he is mistaken. A voluntarily given guilty plea may be accepted by a trial court even when a defendant is simultaneously asserting his innocence, so long as there is a sufficient factual basis. *North Carolina v. Alford*, 400 U.S. 25, 37–39, 91 S.Ct. 160, 167–68, 27 L.Ed.2d 162 (1970); *United States v. Montoya-Camacho*, 644 F.2d 480, 486 (5th Cir. 1981). Further, here, when Jack minimized his participation in the transaction, he made no attempts to deny his guilt nor to withdraw his plea. His explanation indicates that he was present at the meeting where the P2P was transferred to him and a co-conspirator,

that he participated in the negotiations, and that he was interested in the consummation of the transaction whereby the P2P was acquired by him and his associate for the purpose of manufacturing an illegal drug— even though (under his belated explanation) he was a financier of the manufacturing enterprise rather than himself a manufacturer.

We conclude that the district court's finding that a factual basis for the plea existed was far from clearly erroneous.

IV. *Conclusion*

In sum, as we find no error in the acceptance of the guilty plea, the defendant's conviction is AFFIRMED. We note, however, that the sentence to a special parole term, 28 U.S.C. § 841(b)(1)(B), was improperly imposed with regard to the conspiracy charge (Count 1) under 21 U.S.C. § 846. *Bifulco v. United States*, 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980); *United States v. Kennington*, 650 F.2d 544, 546 (5th Cir. 1981). Accordingly, the district court is instructed to amend defendant's sentence by deleting the special parole term imposed for the conspiracy conviction.

AFFIRMED with instruction.