**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jose Campos DAVILA,
Defendant-Appellant.**

**No. 82–1090.**

United States Court of Appeals,
Fifth Circuit.

Feb. 7, 1983.

Rehearing and Rehearing En Banc
Denied March 11, 1983.

---

Ruben Montemayor, Harry A. Nass, Jr., San Antonio, Tex., for defendant-appellant.

Sidney Powell, Asst. U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before INGRAHAM, TATE and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge.

Davila was initially indicted with two others for conspiracy to suborn perjury in violation of 18 U.S.C. §§ 371 and 1622. Pursuant to a plea agreement, these charges were dismissed, and Davila pleaded guilty to a one count bill of information charging him with misprision of a felony in violation of 18 U.S.C. § 4. The two other co-conspirators did not plead guilty, and were acquitted at trial. Subsequent to this acquittal, but prior to being sentenced, Davila moved to withdraw his guilty plea, claiming inter alia that it would be an abuse of discretion to allow him to be punished for failing to report the conspiracy when the conspirators themselves had gone free. The district court denied the motion, and Davila was sentenced to three years, suspended to three years of supervised probation. On appeal, Davila claims that there was an insufficient factual basis to support his guilty plea under Rule 11 of the Federal Rules of Criminal Procedure. In the alternative, he argues that he cannot be convicted of misprision of a felony following acquittal of the perpetrators of the felony. Finally, he urges that the district court abused its discretion in not allowing withdrawal of the plea.

I. Factual Basis of Plea

Davila first attacks the validity of his conviction on the basis of the trial court's failure to comply with Rule 11(f) of the Federal Rules of Criminal Procedure. Rule 11 requires that a court may not entertain a plea of guilty without determining that the plea is made with an understanding of the nature of the charge and unless it is satisfied that there is a factual basis for the plea. Fed.R.Crim.P. 11. The inquiry as to this factual basis must be "precise enough and sufficiently specific" to determine that the defendant's conduct was "within the ambit of that defined as criminal." *Jiminez v. United States,* 487 F.2d 212, 213 (5th Cir.1973), *cert. denied,* 416 U.S. 916, 94 S.Ct. 1623, 40 L.Ed.2d 118 (1974);

*McCarthy v. United States,* 394 U.S. 459, 467, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1968); *United States v. Montoya-Camacho,* 644 F.2d 480, 486 (5th Cir.1981). This factual basis must appear on the record. *United States v. Dayton,* 604 F.2d 931, 940 (5th Cir.1979) (en banc), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980). An acceptance by the court of the defendant's guilty plea is deemed to be a factual finding on each of these requirements and is reviewable under the clearly erroneous standard. *United States v. Jack,* 686 F.2d 226, 229 (5th Cir.1982); *United States v. Dayton, supra* at 941.

In order to sustain a conviction for misprision of a felony, the government must prove that a felony was committed, that Davila had knowledge of the felony, that he failed to notify authorities, and that he took an affirmative step to conceal the crime. *United States v. Gravitt,* 590 F.2d 123, 126 (5th Cir.1979); *United States v. Hodges,* 566 F.2d 674, 675 (9th Cir.1977). As explained by this Court in *Hodges,* mere failure to report a felony is not sufficient. Violation of the misprision statute additionally requires some positive act designed to conceal from authorities the fact that a felony has been committed. *See United States v. Hodges,* (untruthful statements); *United States v. Gravitt,* (suppression of evidence); *Lancey v. United States,* 356 F.2d 407 (9th Cir.1966), *cert. denied,* 385 U.S. 922, 87 S.Ct. 234, 17 L.Ed.2d 145 (harboring of criminal).

Upon receipt of Davila's guilty plea, the district judge requested that the government state the factual basis of the plea. The government replied:

If Mr. Davila's case would go to trial, the Government would establish that on September 26, 1978, defendant Davila contacted Florencio H. Rendon at the request of Robert J. Kuhn. Mr. Davila offered Rendon $10,000 to assist a client of Mr. Kuhn's. A meeting was held in San Antonio, Texas, on September 28, 1978. At this meeting Kuhn, Davila, and Doyle D. Huckabee requested Florencio H. Rendon to change the testimony he

had given in the trial of Frasier Jules Brignon in the Southern District of Texas. The defendants, including the defendant Davila, through this change of testimony would require Rendon to lie. Kuhn agreed to pay Rendon and Davila $15,000 which they were to split among themselves. Mr. Davila would hold the money until the false testimony was given. A second meeting was held in San Antonio, Texas, on October 31, 1978, wherein Mr. Rendon met Kuhn and Huckabee

THE COURT: Excuse me. Are the facts related so far from Mr. Pierce true, Mr. Davila?

MR. DAVILA: Yes, your honor.

THE COURT: That's satisfactory. I will find the factual base exists for a plea and that it has been voluntarily made. I will enter a finding of guilt at this time.

Davila claims that the record discloses only that he failed to come forward and inform authorities of the conversations revealing a conspiracy to suborn perjury, and consequently, that the factual basis of the plea does not demonstrate that he took "affirmative steps to conceal the crime" of conspiracy. The government contends that the affirmative step to conceal was satisfied when Davila agreed to hold approximately $15,000 in payoff money until the false testimony was given.

Davila argues that a recent decision of this Court, *United States v. Johnson,* 546 F.2d 1225 (5th Cir.1977), is dispositive in his favor. In *Johnson,* a defendant pleaded guilty to misprision in exchange for the government's agreement to drop charges against him of conspiring to export illegal arms and ammunition. This Court held that there had been no proof of any affirmative act of concealment, and consequently, that there was insufficient factual basis for the defendant's guilty plea. But Davila's reliance on this case is misplaced. While it is true that both *Johnson* and the instant case involve a guilty plea to misprision of a conspiracy, pursuant to a plea bargain, *Johnson* does not control this case. In

*Johnson,* the government had alleged only that the defendant had known of the conspiracy and had failed to report it to authorities. There was absolutely no showing on the record that he had engaged in any actions designed to conceal the commission of the crime. Here there is no such omission. On the record the government has alleged an affirmative act—Davila's agreement to be the stakeholder for the payoff money—which manifestly goes beyond mere knowledge of the crime and failure to report it.

Similar receipt or possession of evidence has regularly been considered a sufficient affirmative act to support conviction under the misprision statute. In *United States v. Gravitt, supra,* for example, the defendant drove to the place where the fruits of a robbery were hidden and carried the money to his apartment to be divided. These actions were held to be affirmative acts adequate to support conviction under the misprision statute. Possession of money stolen during a bank robbery was deemed a sufficient affirmative act in *United States v. King,* 402 F.2d 694 (9th Cir.1968). So also was removal of stolen whiskey from a truck, replacement of the whiskey with sandbags, and then the driving of the truck to Arizona to divert suspicion from the original thieves. *United States v. Stuard,* 566 F.2d 1 (6th Cir.1977).

Davila contends that his agreement to hold the money was an extension of the crime of conspiracy, and only incidentally served to cloak the commission of the felony. He argues that it would be giving the prosecution "a double punch" if we allowed the government to rely on the facts of the felony to prove the crime of concealment of the felony. But Davila overstates this situation. It is true that the requisite act of concealment here involves an action closely related to the underlying crime. This is, however, a necessary consequence of Davila's decision to plea bargain based upon his agreement to conceal, rather than a consequence of the asserted lack of the act of concealment. In the traditional misprision case, a stranger to a criminal act has taken

some affirmative action to conceal the crime of others. In these situations, it is relatively simple to evaluate whether that person's action was designed to conceal the crime or whether he is being charged merely for his failure to report the crime. The instant case presents a different situation. Here, Davila was initially indicted for the conspiracy. Consequently, the act of concealment required to support the misprision count will necessarily be more closely related to commission of the original crime than it would in situations where the accused did not participate in the underlying crime.

We are aware of the decisions of the Seventh and Ninth Circuits which declared the misprision statute unconstitutional as applied to persons who had reasonable cause to believe that if they had reported the crime to authorities, they would be prosecuted themselves. *United States v. King, supra* (if defendants had reported crime to authorities, they would risk being prosecuted as aiders or abetters); *United States v. Kuh,* 541 F.2d 672 (7th Cir.1976) (if defendants had reported the crime they could have been prosecuted for possession of stolen goods); *United States v. Jennings,* 603 F.2d 650 (7th Cir.1979) (report of narcotics sale would have exposed defendant to charges of solicitation of a bribe). Whether or not holding persons guilty of misprision under such circumstances would violate their privilege against self-incrimination guaranteed by the Fifth Amendment, the present case implies no similar Fifth Amendment concerns. Davila voluntarily pleaded guilty. He weighed his chances, and chose to cooperate with the government in exchange for being charged with a separate offense. Before accepting his plea, the trial judge carefully determined, pursuant to Rule 11, that the plea was a knowing and voluntary act. The judge also made certain that Davila appreciated the consequences of his guilty plea and, more specifically, that Davila clearly understood that a plea of guilty involved the waiver of certain constitutional rights, including the right to trial by jury, the right to confront one's accusers, and the right not to be compelled to incriminate himself.[1] *See Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); *Grantling v. Balkcom,* 632 F.2d 1261, 1264 (5th Cir.1980). *See also* Fed.R. Crim.P. 11, advisory committee notes (1974 amendment).

Once a plea of guilty has been entered, all non-jurisdictional challenges to a conviction's constitutionality are waived. Only an attack on the voluntary and knowing nature of the plea can be sustained. *Bradbury v. Wainwright,* 658 F.2d 1083, 1087 (5th Cir.1981), *cert. denied,* 456 U.S. 992, 102 S.Ct. 2275, 73 L.Ed.2d 1288 (1982). *McMann v. Richardson,* 397 U.S. 759, 766, 90 S.Ct. 1441, 1446, 25 L.Ed.2d 763 (1970). Davila makes no contention that his plea was not made knowingly, willingly, and with the benefit of competent counsel. His defense of self-incrimination was waived at the time he offered that plea.

Finally, we find that being stakeholder for the payoff money was an overt

---

1. The exchange between the district judge and Davila was as follows:

THE COURT: Captain Davila, you are not required to plead guilty by law. In fact, you are entitled to plead not guilty or to persist in a plea of not guilty if you have not heretofore made that plea. You have the right to be tried either by the judge or by a jury at your election. You have the right to assistance of counsel at every stage of the proceedings. At trial you have the right to be present and to look at and listen to the witnesses against you. You have the right to cross-examine the witnesses through your lawyer. That means to question the witnesses in order to test their credibility.

At any trial you have, once again, the Fifth Amendment privilege to remain silent, and if you should remain silent, your silence could not be taken by the judge or jury as any evidence whatsoever of your guilt. Do you understand these things, sir?
MR. DAVILA: Yes, sir, your honor.
    \*    \*    \*    \*    \*    \*
THE COURT: If you enter a plea of guilty, Captain Davila, then you waive the rights I have just described to you. Essentially they are called your rights to a trial, and you would be convicted upon your own plea, and therefore, you would be entitled to only a sentence fairly imposed. Do you understand that, sir?
MR. DAVILA: Yes, sir.

act of concealment, irrespective of Davila's participation in the original conspiracy. We recognize that application of the misprision statute in this case is not centered in the traditional mold. But, we find no authority for nor do we accept the proposition that participants in a crime cannot also undertake positive acts to conceal their crime in violation of the misprision law. Davila's agreement to be the stakeholder for the payoff money constituted an adequate factual basis under Rule 11(f) to support his plea of guilty to misprision.

It is well here to summarize our conclusions as to the nature of the crime of misprision as it is applied to this kind of case. It is toward this issue that Judge Tate directs his carefully presented dissenting opinion. The cases in which misprision is found to fail as a crime separate from the crime it conceals are cases where the affirmative act of concealment is a part of the crime itself. Here Davila, as the stakeholder, was doing something different and not necessary to the conspiracy to suborn perjury. Davila was guilty of the conspiracy to suborn perjury even if he had not been the stakeholder, and the act of stakeholding itself was a separate act not necessary to the original conspiracy, but was an affirmative act of concealment of that conspiracy.

Admittedly, it can well be argued that the crime of misprision is defective because it always raises the spectre of self-incrimination. But it is not for us in this case to decide there can be no such crime as misprision because it is virtually always self-incriminatory. Years of established and binding authority are to the contrary. Davila essentially was charged with an additional affirmative act which concealed the commission of the felony with which he was also connected. Cf. *United States v. Gravitt, supra,* 590 F.2d at 126. The misprision offense did not compel him simply to reveal knowledge of the felony which, without more, would be self-incriminating. Rather,

it charged him with an "affirmative act" of concealment of a felony.

## II.   Acquittal of Davila's Original Co-Defendants

■   Davila next argues that his conviction is invalid because his original co-defendants were later acquitted of the conspiracy to suborn perjury charge. Specifically, the issue is whether the guilty plea to misprision of a felony can stand independently of the underlying conspiracy violation.

Davila claims that his conviction for misprision is precluded by extrapolation of the common law rule that the conviction of only one defendant in a single conspiracy prosecution cannot be upheld if all other alleged co-conspirators in the same trial are acquitted. See *Herman v. United States,* 289 F.2d 362, 368 (5th Cir.1961) *cert. denied,* 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93; *United States v. Sheikh,* 654 F.2d 1057, 1062 (5th Cir.1981), *cert. denied,* 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982).[2] While this traditional rule is the current law of this Circuit, *United States v. Albert,* 675 F.2d 712, 713 (5th Cir.1982), recent decisions of both this Court and the Supreme Court have limited reliance on the rule except in its narrowest application. It is not applicable here.

In *Standefer v. United States,* 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980), the Supreme Court held that a defendant accused of aiding and abetting in the commission of a federal offense could be properly convicted despite the acquittal of the principal. The government was held not to be foreclosed from putting a defendant on trial simply because another jury had determined that his principal was not guilty of the offenses charged. See also *United States v. Musgrave,* 483 F.2d 327, 331 (5th Cir.1973), *cert. denied,* 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315. Aiders and abetters are at least somewhat analogous to

---

2.   The justification for this rule is that acquittal of all but one conspirator precludes the possibility of an agreement between the remaining defendant and another, thus negating, by defi-

nition, the existence of a "conspiracy." See *United States v. Goodwin,* 492 F.2d 1141, 1144 (5th Cir.1974).

co-conspirators, and this Court has applied *Standefer* to uphold a conspiracy conviction obtained in a separate trial even though the defendant's named co-conspirators had each been acquitted earlier. *United States v. Espinoza-Cerpa,* 630 F.2d 328 (5th Cir.1980). In *Espinoza-Cerpa,* the Court questioned the rationale of the traditional conspiracy rule, and in any case, refused to extend its scope. The Court observed:

> The notion that the acquittal of one's alleged co-conspirators concludes the fact of their non-complicity misapprehends the true nature of an acquittal in the scheme of trial by jury in the American criminal justice system. It has long been recognized that criminal juries in the United States are free to render 'not guilty' verdicts resulting from compromise, confusion, mistake, leniency or other legally and logically irrelevant factors.

*Id.* at 332 (citations omitted).

We find, therefore, that the applicability of the traditional rule is limited to the narrow circumstances envisioned by the common law. We find no justification to extend it to negate Davila's conviction, obtained after a thorough hearing and under a plea bargain agreement, prior to the acquittal of his charged co-conspirators. As the Supreme Court has said: "[w]hile symmetry of results may be intellectually satisfying, it is not required." *Standefer v. United States, supra* 100 S.Ct. at 2009.

### III. Abuse of Discretion

Davila finally urges that the district court abused its discretion in refusing to allow him to withdraw his guilty plea. Essentially, Davila contends that it is unfair to convict him for concealing the crime after its main perpetrators have been acquitted. He relies upon Rule 32(d) of the Federal Rules of Criminal Procedure.[3] While F.R.Cr.P. 32(d) permits post-sentence withdrawal of a guilty plea only to prevent manifest injustice, the section does not articulate a standard governing the withdrawal of a guilty plea before sentence is imposed. The Supreme Court has held that pre-sentence withdrawal should be permitted "if for any reason the granting of the privilege seems fair and just." *Kercheval v. United States,* 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927).

In considering the circumstances under which withdrawal of a guilty plea before imposition of sentence should be permitted, we have stated that such motions should be liberally construed in favor of the accused. *Kirshberger v. United States,* 392 F.2d 782, 784 (5th Cir.1968). At the same time, however, we have stressed that there is no absolute right under F.R.Cr.P. 32(d) to withdraw a plea of guilty, and that acceptance of the motion is within the sound discretion of the trial court. The decision of the court will be disturbed only upon a showing that it abused that discretion. *United States v. Rodriquez-DeMaya,* 674 F.2d 1122, 1128 (5th Cir.1982); *United States v. Ramussen,* 642 F.2d 165, 167 (5th Cir.1981). The burden is on the defendant to establish that there is justification for withdrawal.

The circumstances alleged as grounds for withdrawal are numerous, and the lower court's determination of whether permitting such withdrawal would be "fair and just" depends upon the particular facts of each case. Circuit courts have upheld refusal by the district court to permit withdrawal of guilty pleas in instances of claims as sympathetic as the one Davila asked us to consider here. In *United States v. Podell,* 519 F.2d 144 (2d Cir.1975), *cert. denied,* 423 U.S. 926, 96 S.Ct. 270, 46 L.Ed.2d 252, for example, the defendant sought to withdraw his guilty plea on the dual grounds that the factual basis of the plea was insufficient and that the plea had been induced by unfulfilled promises of the prosecutor. The Second Circuit recognized that the

---

**3.** Federal Rules of Criminal Procedure, Rule 32(d) provides:

> (d) Withdrawal of plea of guilty. A motion to withdraw a plea of guilty or of *nolo contendere* may be made only before sentences imposed or imposition of sentences suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

judge had failed to outline in detail the necessary elements of the charge, and that the prosecutor had "violated the spirit, if not the letter," *id. at 148*, of its promise not to recommend a jail sentence. Nevertheless, the court ruled that the defendant had not relied upon the prosecutor's promise, and that the judge's explanation of the charges was "enough to show a firm factual basis" for the plea. Consequently, the denial of the plea did not constitute an abuse of the trial judge's discretion.

Also, in *Kirshberger v. United States*, 392 F.2d 782 (5th Cir.1968), the defendant pleaded guilty after waiving his right to an attorney. Prior to sentencing, he sought to withdraw his plea on the grounds that he had not been represented by counsel, and that he had been promised by the prosecutor that certain state charges against him would be dropped. Following a hearing, the district court denied the motion and this Court affirmed, finding that the allegations about the promise were "rather vague and uncertain" and that we were "firmly convinced" that the guilty plea was "freely, voluntarily and understandingly entered." *Id.* at 786.

Again, in *Barker v. United States*, 579 F.2d 1219 (10th Cir.1978), the defendant sought to withdraw his plea, claiming that he was mentally incompetent at the time of making the plea. The lower judge refused to conduct a full hearing on the issue of competence, and utilized a court-appointed rather than an independent psychiatrist as requested by the defendant. On the basis of the court-appointed doctor's evaluation, the judge declared the defendant sufficiently competent to enter a valid plea. The Tenth Circuit upheld the ruling, and found the lack of a full hearing on competence was not an abuse of the trial judge's discretion. *See also United States v. Erlenborn*, 483 F.2d 165 (9th Cir.1973), where the defendant claimed he had misunderstood the nature of the charge against him; *United States v. Tivis*, 421 F.2d 147 (5th Cir.1970), where the defendant claimed he had been inadequately represented by counsel at the time of making his plea; *United States v. Hughes*, 325 F.2d 789 (2d Cir.1964) *cert. denied*, 377 U.S. 907, 84 S.Ct. 1167, 12 L.Ed.2d 178, where the defendant claimed his plea had been induced by threats of the prosecuting attorney; and *United States v. Arrendondo*, 447 F.2d 976 (5th Cir.1971), *cert. denied*, 404 U.S. 1026, 92 S.Ct. 683, 30 L.Ed.2d 676, where the defendant claimed newly discovered evidence would prove his innocence. In all of these cases the appellate court upheld the district court's denial of the motion to withdraw a guilty plea prior to sentencing.

It is obvious that resolution of these cases depends, to a large degree, on whether the appellate court is convinced of the merits underlying the petitioner's claims. As in all cases involving sufficiency of the evidence, the authoritative value of such decision is limited. Each case must be evaluated on its own facts. One may generalize, however, to the extent that the cases illustrate a distinct reluctance to find that the trial court has abused its discretion in denying the withdrawal motion.

Davila asks that the district court be required to withdraw his plea because his two companions in the alleged original conspiracy have been acquitted. Because Davila was not finally charged with the crime of conspiracy, but rather with misprision of that crime, his claim is not identical to that of a defendant whose co-defendants have been found not guilty. But for our purposes the analogy is close, and indeed, engenders less sympathy for Davila than does the situation of a convicted co-defendant when the other defendants in the same crime are acquitted.[4] Davila obtained advantages in his plea bargain.[5] Davila is not

---

4. As explained earlier, the acquittal of co-participants in a crime does not prove that the crime did not occur. *Rosecrans v. United States*, 378 F.2d 561 (5th Cir.1967).

5. The government gave Davila the opportunity to plead guilty to a lesser charge than that faced by his original co-defendants. He was never exposed to the "risk", accepted by the other two men, of being convicted of conspiracy. Basically, Davila gambled on whether the

making any protestations as to his innocence. In fact, Davila freely acknowledged his guilt and testified as to his guilt during the trial of the other two men.

We have found two cases involving the question whether the trial court abused its discretion in refusing to permit withdrawal after co-defendants have been acquitted. In *Powers v. United States,* 188 F.2d 355 (5th Cir.1951), the defendant Powers pleaded guilty to transporting a stolen vehicle in interstate commerce. Pending sentencing he was released on bond and illegally left the state to avoid testifying against his co-defendant. The co-defendant was subsequently acquitted, and Powers moved to withdraw his plea. The district court denied the motion. We affirmed, finding that there had been no abuse of discretion in refusing to allow Powers to change his plea.

The second case is in *Government of the Virgin Islands v. Berry,* 631 F.2d 214 (3d Cir.1980). There also the Circuit Court affirmed the district court's denial of the defendant's motion to withdraw his plea. The defendant, Berry, had pleaded guilty to second degree murder pursuant to an agreement with the government that additional charges against him would be dropped. Berry agreed to testify for the government against another person charged in the same robbery and murder. Six days later, the co-defendant was found not guilty, and Berry filed a motion to withdraw his plea. Berry had apparently believed that the co-defendant would take the stand at his own trial and testify that Berry was the person who had shot the victim. The co-defendant did not testify. Consequently, Berry claimed, he had not made a "voluntary and intelligent choice" to plead guilty. In finding that the lower court had not abused its discretion in refusing to allow Berry to withdraw his plea under these circumstances, the Third Circuit stated that "Berry and his counsel may have made a

tactical miscalculation by not considering the possibility that Francois [the co-defendant] would not testify at his own trial, but *such a tactical error does not require the court to allow withdrawal of the plea." Id.* at 221. (emphasis added).

Davila is here asking us to insulate him from the consequences of a similar "tactical error". A guilty plea "frequently involves the making of difficult judgments". *McMann v. Richardson, supra,* 397 U.S. at 769, 90 S.Ct. at 1448.[6] Were withdrawal automatic in every case where the defendant decided it would be to his best interest to present his case to a jury, "guilty pleas would become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim." *United States v. Barker,* 514 F.2d 208, 221 (D.C.Cir.1975) (en banc), *cert. denied,* 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682.

Davila weighed his options and knowingly and intelligently decided not to risk presenting his case to a jury. He voluntarily acknowledged his guilt with intelligent understanding of the nature of the charge and the consequences of the plea. Entry of the guilty plea was a deliberate, reasoned decision. We do not find that the refusal of the district court to permit him to withdraw his plea was an abuse of discretion.

## IV.  Conclusion

We hold that Davila's agreement to keep the payoff money until the perjured testimony was given was an affirmative act of concealment meeting the requirements of 18 U.S.C. § 4, that his misprision conviction can stand independently of the felony charge, and that the district court did not abuse its discretion in denying his motion to withdraw his plea. Accordingly, the decision of the district court must be affirmed.

AFFIRMED.

government could prove the conspiracy charge. He cannot be heard to complain now, after losing that gamble.

**6.** In fact, so long as a factual basis for the plea exists under Rule 11, a court may accept such a

"tactical" guilty plea even from a defendant who continues to assert his innocence. *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

TATE, Circuit Judge, dissenting:

I respectfully dissent. Until now, it has been the law of this (and other) circuits that an accused cannot be guilty of misprision of a felony (an affirmative act of concealment of a felony known to the offender, without communicating this knowledge to authorities as soon as possible), 18 U.S.C. § 4,[1] where the conduct concealed constitutes the accused's commission of the offense itself. *United States v. Johnson,* 564 F.2d 1225 (5th Cir.1977). Under jurisprudential interpretations to be cited, by reason of the Fifth Amendment protection against self-incrimination, an offender may not be guilty of misprision if he does not immediately report his own criminal conduct to law enforcement authorities. When the "factual basis" for a plea of guilty, Fed.R.Crim.P. 11(f),[2] does not disclose that "the conduct admitted by the accused constitutes the offense charged in the information," *Johnson, supra,* 546 F.2d at 1226, the conviction by such plea must be set aside on appeal, *id.,* 546 F.2d at 1227.

Here, the sordid facts underlying this appeal concern an alleged conspiracy between a lawyer (Kuhn), an intermediary (Huckabee), and the defendant Davila (until then a highly respected police officer) to bribe a witness (Rendon) in a federal criminal trial to provide false material testimony. Davila's part in the conspiracy was to offer $10,000 to Rendon to change the testimony he had given in a former trial (an offer Rendon accepted), to receive $15,000 from the lawyer and to hold it until after the false testimony was given, at which time he would pay Rendon and divide the remaining $5,000 between himself and Huckabee. The conspiracy was discovered, and Davila was arrested with approximately $14,000 still in his possession (the bulk of which, of course, was intended to bribe the witness Rendon).

Kuhn, Davila, and Huckabee were charged with the conspiracy to suborn perjury from this witness. Davila's present plea of guilty to misprision was the result of a plea bargain on the eve of trial. The more serious conspiracy offense against him was dismissed, and he pleaded guilty and received a suspended sentence on a superseding indictment of the lesser-punished offense of misprision. (Although Davila cooperated fully with the prosecution and testified in accord with the government's theory of the conspiracy charges, the other alleged coconspirators were acquitted.)

The majority holds that the requisite affirmative act of concealment of the crime occurred when Davila agreed to hold (and in fact, actually held) $15,000 in order to pay the bribed juror following his trial, but nevertheless did not report that fact immediately to law enforcement authorities. Thus, the majority holds the crime of misprision was committed by Davila's failure to reveal immediately to law enforcement authorities that he was holding $10,000 for the purpose of bribing a juror, thus affirmatively concealing the conspiracy (in which he played a principal part) to bribe the juror.

In so holding, the majority relies upon decisions upholding as acts of affirmative concealment-misprision the nonrevealing by the accused of acts *subsequent* to the actual offense. No decision is cited where the affirmative act of concealment was a fact constituting part of the actual substantive felony allegedly being concealed—here, a conspiracy, in which the very act of concealment now relied upon (Davila's holding of the money to pay the bribed witness after his false testimony), was the identical crimi-

---

1. 18 U.S.C. § 4 provides:
    Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined not more than $500 or imprisoned not more than three years, or both.

2. The purpose behind such a requirement is to protect a defendant who may plead voluntarily with an understanding of the nature of the charge, but without realizing that his conduct does not actually fall within the definition of the crime charged. *McCarthy v. United States,* 394 U.S. 459, 467, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969); *United States v. Johnson,* 546 F.2d 1225, 1226 (1977).

nal conduct forming a substantial part of Davila's commission of the felony allegedly being concealed. As will be shown, this is contrary to the decisional interpretations of the misprision statute and results, in violation of the Fifth Amendment protection against self-incrimination, in holding that an offender is guilty of misprision if he does not immediately report his own criminal conduct to the prosecutorial authorities.

The majority somewhat persuasively suggests that Davila's act of holding the money could be separately viewed as misprision independent of the conspiracy, especially since the conspiracy charge against Davila himself was dismissed. Under this view, it is as if only the other three had been charged with conspiracy, and Davila was charged only with misprision, a lesser-punished offense, because he affirmatively concealed its commission by holding the money to be used to bribe the juror. However attractive this view is, it cannot be sustained. First, here Davila was charged, not with concealing a conspiracy of others, but with concealing a conspiracy in which he himself was a coconspirator.[3] Second, even if his conduct were charged as an offense separate from a conspiracy in which he played a part, to require him to report his own criminal conduct to law enforcement authorities would implicate a violation of the accused's Fifth Amendment protection against compulsory self-incrimination—not within any presumed legislative intent, and not sustainable by the courts if indeed intended.[4]

The decisions relied upon by the majority, which held that the offense of misprision was committed, all involve an affirmative act of concealment by the defendants, subsequent to and independent of the substantive offense. To the contrary, where the accused's act of concealment relied upon constitutes part of a substantive offense by him, the courts have uniformly held that the crime of misprision, 18 U.S.C. § 4, is not committed.

In this circuit, *United States v. Johnson,* 546 F.2d 1225 (1977), vacated a plea of guilty to misprision pursuant to a plea bargain, where the factual basis shown was only that the accused had failed to report several firearms control criminal violations, with which he himself was with others initially charged. (As here, the charges for these firearms felonies were dismissed, in return for the defendant's plea of guilty to misprision.) We there noted that the mere failure to report a felony does not constitute the crime of misprision, 18 U.S.C. § 4, and that the showing that he had failed to report the criminal transactions in which he himself was involved does not constitute an affirmative step in the concealment of the crime so as to constitute misprision. 546 F.2d at 1227.

Under similar circumstances, as I read them, the decisions of other circuits are to similar effect. The most recent of them are *United States v. Jennings,* 603 F.2d 650 (7th Cir.1979); *United States v. Kuh,* 541 F.2d 672 (5th Cir.1972); and *United States v. King,* 402 F.2d 694 (9th Cir.1968). In *Jennings,* the misprision conduct charged was the accused's failure to report that a dealer in drugs had possessed and distributed them, where the accused had himself set up the purchase of these drugs from the dealer by an undercover agent; the conviction was reversed. 603 F.2d at 651, 652. In *Kuh,*

---

3. The superseding indictment to which Davila pleaded guilty charged:

    That on or about September 26, 1978, to and including January 23, 1979, in the Western District of Texas, Defendant JOSE C. *DAVILA* having knowledge of the commission of a felony cognizable by a court of the United States, that is, conspiracy to suborn perjury by Robert J. Kuhn, Doyle D. Huckabee, and Jose C. *Davila* from Florencio Rendon, did wilfully conceal the same and did not, as soon as possible, make known the commission of said felony to a judge or other person in civil or military authority within the United States; all in violation of Title 18, United States Code, Section 4.

4. In LaFave and Scott, *Criminal Law* 526 (1972), the brief discussion of the crime does not indicate that any such interpretation has been advanced and notes that the repeal of this little-used statute has been recommended by the National Commission on Reform of Federal Criminal Laws, in favor of an offense of hindering of law enforcement officers.

the indictment for misprision was dismissed by the district court, where the offense charged was that subsequent to the offense these defendants had received a substantial sum of money that they knew had been stolen from an armored car, and that their concealment of this stolen money constituted the affirmative act necessary to constitute misprision; the trial court's dismissal of the indictment was affirmed. In *King*, the brother of a bank robber was convicted of misprision, where his affirmative act of concealment was alleged to be his receipt of some of the stolen money after the robbery (knowing of its source) (and where he had been present when the robbery was initially discussed, although he did not take part in it); pointing out that although the conduct might have constituted a violation of other criminal statutes (*e.g.*, knowingly receiving stolen money), the court held that it did not constitute the crime of *misprision*, 18 U.S.C. § 4, and reversed the conviction.

In all of these decisions, the courts pointed out that (as is true in the present case) the immediate report to the authorities of the acts allegedly constituting affirmative concealment would have furnished evidence sufficient to prosecute the accuseds for a crime, and that 18 U.S.C. § 4 would unconstitutionally violate Fifth Amendment protections if it were indeed interpreted to compel an individual to report conduct that he had reasonable cause to fear might lead to his prosecution and conviction of a crime.

The majority dismisses these Fifth Amendment concerns by noting that, in pleading guilty, Davila was informed and clearly understood that he had waived Fifth Amendment rights. I do not follow the majority's reasoning that conduct, which could not in itself be a violation of the misprision statute,[5] could somehow be converted into guilt of the substantive offense because an individual had voluntarily pleaded guilty to it.

I therefore respectfully dissent from the opinion of my esteemed brothers.

---

**5.** That is, if so construed (as need not be), it would unconstitutionally require an individual to incriminate himself, in violation of the Fifth Amendment.